STATE OF CONNECTICUT *v.* THOMAS CASCONE
(11527)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and SANTANIELLO, Js.

Argued November 15, 1984—decision released February 5, 1985

*Albert G. Murphy,* for the appellant (defendant).

*William Domnarski,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John Droney* and *John M. Massameno,* assistant state's attorneys, for the appellee (state).

PETERS, C. J. The narrow issue presented by this appeal is the scope of the attorney-client privilege of an accomplice who testifies at a criminal trial. The defendant, Thomas Cascone, was charged in a two-count substitute information with robbery in the first

degree in violation of General Statutes § 53a-134 (a) (4),[1] and with conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-48.[2] After a jury trial, the defendant was found guilty as charged on both counts and judgment was rendered accordingly. The defendant appeals from that judgment.

The jury could have reasonably found the following facts. On July 13, 1980, Peter Fuller robbed a Kentucky Fried Chicken store in Avon. The store was at that time managed by the defendant. Fuller carried out the robbery at the defendant's direction in return for a promise of one hundred dollars and a trip to Florida. After the robbery, Fuller was charged with first degree robbery, but the state promised him that in return for his testimony against the defendant the charge would be reduced to second degree robbery and Fuller's cooperation would be brought to the court's attention. Before recruiting Fuller, the defendant had unsuccessfully attempted to persuade one Kevin Maloney to rob the store.

The defendant, who denied any complicity in the robbery, raises only one issue on appeal. He contends that the trial court erred when it granted the state's motion in limine to preclude defense counsel from asking either Fuller or Attorney Peter Zaccagnino, who had formerly

[1] General Statutes § 53a-134 (a) (4) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." Robbery in the first degree is a class B felony.

[2] General Statutes § 53a-48 provides in pertinent part: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." Conspiracy to commit a class B felony is a class B felony. General Statutes § 53a-51.

represented both Fuller and the defendant, about allegedly exculpatory pretrial statements made by Fuller to Zaccagnino. The defendant asserts that at a time when both Fuller and the defendant were represented by Zaccagnino on charges arising from the Avon robbery, Fuller twice told Zaccagnino that the defendant had not been involved in the crime. The defendant alleges that Fuller made one such statement during a conference among Fuller, the defendant and Zaccagnino in Zaccagnino's office. The defendant further alleges that Fuller repeated this statement when Fuller and Zaccagnino were in court to enter a plea to an information filed against Fuller in which he was accused of having committed the robbery. Arguing that the trial court misconstrued the attorney-client privilege, the defendant maintains that he was prejudiced by his inability to attack Fuller's credibility through the presentation of this evidence.

We agree with the defendant's claim in part. In the circumstances of this case, the first statement should have been admitted because it does not fall within the attorney-client privilege. We cannot, however, judge the propriety of the exclusion of the second statement because we lack an adequate factual record.

The basic principles of the attorney-client privilege are undisputed. Communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. *Doyle* v. *Reeves,* 112 Conn. 521, 523, 152 A. 882 (1931); Tait & LaPlante, Handbook of Connecticut Evidence (1976) § 12.5. By contrast, statements made in the presence of a third party are usually not privileged because there is then no reasonable expectation of confidentiality. *State* v. *Colton,* 174 Conn. 135, 138–39, 384 A.2d 343 (1977); McCormick, Evidence (2d Ed. 1972) § 91, p. 188.[3] When

[3] The presence of agents or employees of an attorney or client, if necessary to the consultation, will not preclude a reasonable expectation of con-

two or more people consult an attorney together on a matter of joint interest, these competing considerations are normally resolved by allowing their communications to be privileged as to the outside world, though not as to each other in a later controversy between themselves. See *Grand Trunk Western R. Co.* v. *H. W. Nelson Co.,* 116 F.2d 823, 835 (6th Cir. 1941); *Hellyer* v. *Hellyer,* 129 Ariz. 453, 456, 632 P.2d 263 (1981); McCormick, Evidence, supra, pp. 189–90; 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2312. In the context of criminal proceedings, this compromise has been applied to protect communications between codefendants and their joint attorney when the conversation related to their participation in the charged offense. See *People* v. *Kor,* 129 Cal. App. 2d 436, 440–43, 277 P.2d 94 (1954); cf. *Ohio-Sealy Mattress Mfg. Co.* v. *Kaplan,* 90 F.R.D. 21, 29 (N.D. Ill. 1980); *Matter of Grand Jury Subpoena,* 406 F. Sup. 381, 388-89 (S.D.N.Y. 1975) (privilege applies to discussions between codefendants and their several attorneys regarding the presentation of a common defense).

These principles, when applied to the statement allegedly made in Zaccagnino's office, compel the conclusion that the communication was privileged when made. Both Fuller and the defendant were then represented by Zaccagnino on charges arising out of one and the same robbery. The privilege was not per se destroyed by the fact that, before the defendant's trial, both Fuller and the defendant had retained new counsel.

The question that remains is whether Fuller's later cooperation with the state and his willingness to testify against the defendant destroyed the privilege previously established. We can identify two conflicting lines

fidentiality. See *Goddard* v. *Gardner,* 28 Conn. 172, 175 (1859); *State* v. *Fingers,* 564 S.W.2d 579, 582 (Mo. App. 1978); McCormick, Evidence (2d Ed. 1972) § 91, pp. 188–89.

of cases that address this issue. On the one hand, the state urges us to rely on cases that hold that a privilege involving joint clients survives any later controversy between them unless, in subsequent litigation, the clients are opposing parties. In *State* v. *Archuleta,* 29 N.M. 25, 31, 217 P. 619 (1923), the court upheld a claim of privilege, reasoning that an accomplice who testifies for the state "is in no sense a party to the proceeding, and is in no legal sense in controversy or litigation with the [defendant]." See *Matter of Grand Jury Subpoena,* supra, 393–94. On the other hand, in support of the defendant's claim, we have found cases holding that an accomplice who appears as a witness for the prosecution waives all evidentiary privileges. See *People* v. *Gallagher,* 75 Mich. 512, 516, 42 N.W. 1063 (1889); *Jones* v. *State,* 65 Miss. 179, 183–84, 3 So. 379 (1887); annot., 51 A.L.R.2d 521, § 4 (1957).

We decline to adopt either of these categorical alternatives. It is important to accommodate the conflicting values that the attorney-client privilege implicates in this case. Although the existence of the privilege encourages the candor that is necessary for effective legal advice; see *Rienzo* v. *Santangelo,* 160 Conn. 391, 395, 279 A.2d 565 (1971); *Goddard* v. *Gardner,* 28 Conn. 172, 174–75 (1859); the exercise of the privilege tends to prevent a full disclosure of the truth in court. See *Turner's Appeal,* 72 Conn. 305, 318, 44 A. 310 (1899). Indeed, in the case at bar the state itself "asserted" the privilege by filing its motion in limine[4] and transformed the privilege from a shield into a sword.

---

[4] In addition to filing the motion in limine, the state's attorney made several objections during Zaccagnino's direct testimony at the hearing on the motion and once referred to Fuller as his client. While Fuller himself properly claimed his privilege at the hearing, the state's assertion of Fuller's privilege was of doubtful propriety.

In our view, to resolve the competing interests of confidentiality and access to evidence we must employ a fact-specific balancing test. It is inappropriate to have an iron rule that any accomplice invariably either retains or waives the attorney-client privilege whenever he testifies in a criminal prosecution. Rather, as a prominent treatise suggests, a trial court should honor the privilege if and only if "[t]he *injury* that would inure to the [attorney-client] relation by the disclosure of the communicatio[n] [is] *greater than the benefit* thereby gained for the correct disposal of litigation." (Emphasis in original.) 8 Wigmore, supra, § 2285 (4), p. 527; see *Hearn* v. *Rhay,* 68 F.R.D. 574, 581–82 (E.D. Wash. 1975).

Applying this test to the instant appeal, we conclude that the attorney-client privilege should not have protected the statement allegedly made by Fuller in Zaccagnino's office. Disclosure of the statement would not have greatly harmed Fuller's attorney-client relationship with Zaccagnino. Since Zaccagnino was no longer Fuller's attorney at the time of the defendant's trial there was no possibility of impairing an ongoing relationship. The defendant, furthermore, sought disclosure of a specific communication, not general access to all communications between Fuller and Zaccagnino. More important, Fuller had already revealed his own involvement in the crime and had agreed to repeat this revelation at a public trial. Fuller had also exposed formerly confidential matters by cooperating with the state's attorney in pretrial preparation. In sum, Fuller's conduct was so inconsistent with a claim of confidentiality that disclosure in court of his prior communication to Zaccagnino would not have made any further significant inroads into the privilege.

At the same time, prohibiting the disclosure of the communication seriously impeded the adjudicative process. Accomplice testimony is viewed with suspicion.

"The conditions of character and interest most inconsistent with a credible witness, very frequently . . . attend an accomplice when he testifies." *State* v. *Carey,* 76 Conn. 342, 349, 56 A. 632 (1904). Juries are routinely instructed to weigh the credibility of accomplice testimony with particular care. See, e.g., *State* v. *Estep,* 186 Conn. 648, 652, 443 A.2d 483 (1982); *State* v. *Ferrara,* 176 Conn. 508, 511, 408 A.2d 265 (1979); *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978). Fuller was the state's chief witness against the defendant. The proffered statement would have directly called into question Fuller's credibility on the basic issue of the defendant's involvement in the crime. There was no other available evidence that could have effectively accomplished the same purpose.[5]

Because the evidence excluded by the privilege struck at the heart of the state's case yet had only a limited potential for disrupting Fuller's attorney-client relationship, the harm of its exclusion outweighed the cost of its admission.[6] The trial court erred in excluding this evidence and its error was not harmless.

The trial court's error requires a new trial. Because the admissibility of testimony regarding the statement allegedly made in court may be an issue on retrial we will next briefly address that point.

It is unclear from the record whether the defendant claims that in this communication Fuller repeated his

[5] Although the defendant was able to introduce a similar prior inconsistent statement by Fuller into evidence, it was offered through the testimony of a convicted felon who had had a violent argument with Fuller in the past. Clearly, the testimony of Attorney Zaccagnino would not have been cumulative.

[6] Because of our disposition of the defendant's common law argument, we need not weigh the policy behind the attorney-client privilege against the criminal defendant's constitutional rights of confrontation and compulsory production of witnesses. See note, *"Defendant v. Witness:* Measuring Confrontation and Compulsory Process Rights Against Statutory Communications Privileges," 30 Stan. L. Rev. 935 (1978).

assertion of the defendant's noninvolvement in the robbery, or that Fuller merely responded in the negative when asked by Zaccagnino about the existence of a conflict of interest in Zaccagnino's joint representation of Fuller and the defendant. The evidentiary value of the former would obviously be much greater than that of the latter. It is also unclear whether the statement was made in the presence of third parties. Whether or not the communication was actually overheard, the presence of third parties who had no legitimate interest in the attorney-client relationship would preclude a reasonable expectation of confidentiality. Further inquiry into the circumstances surrounding this communication must be made in order to determine its admissibility.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.