STATE

v.

**Sharon JUAREZ et al.**

**No. 88–350–M.P.**

Supreme Court of Rhode Island.

March 7, 1990.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Michael DiLauro, Asst. Public Defenders, Susan B. Iannitelli, North Providence, for defendants.

OPINION

KELLEHER, Justice.

In October of 1988 this court issued a common law writ of certiorari, following a petition filed by Arcadio Vasquez (Vasquez) and John J. Hardiman (Hardiman), to review an order of the Superior Court of Providence County in which a trial justice refused to quash completely a subpoena duces tecum lodged against Hardiman, Vasquez's attorney, by counsel for Sharon Juarez (Juarez).[1] Because of the somewhat complicated nature of this matter, a review of what events preceded this petition is necessary.

In early August of 1985 police discovered the body of one Manuel Perez Samayoa (Samayoa) on a driveway in Narragansett, Rhode Island. Shortly thereafter Vasquez and Armando Perez (Perez) were indicted for the murder of Samayoa.[2] Perez's wife, Juarez, was later charged by indictment with the same crime of murder in violation of G.L.1956 (1981 Reenactment) § 11–23–1. After a plea agreement between Juarez and the state fell through, the state entered into an agreement with Vasquez. In exchange for his testimony against Juarez one count of the indictment against Vasquez was dismissed, and the murder charge was amended to the charge of compounding a felony in violation of § 11–1–5, as amended by P.L.1981, ch. 177, § 1.

Subsequently, in July of 1988, counsel for Juarez filed a motion to produce, accompanied by a subpoena duces tecum asking that Vasquez's counsel, Hardiman, turn over certain material relating to a polygraph examination that Vasquez took at Hardiman's direction. The motion to produce also sought compliance by the state.[3] Hardiman moved to quash the subpoena.

Shortly thereafter, a hearing was held on Hardiman's motion to quash the subpoena.[4]

At the hearing, the trial justice denied the motion to quash and specifically ordered disclosure of "the results of the polygraph test, as well as the specific questions that were presented to Mr. Vasquez during the interview." She continued: "I'm not going to order the former attorney for Mr. Vasquez, Mr. Hardiman, to divulge any conversation or any statements that his client may have made to him or he may have made to his client. What I'm ordering only is the results of the polygraph test and the material utilized in the polygraph test to the extent the questions specifically that were asked of the defendant or the former co-defendant during the interview." Trial of Juarez on the murder charge has been stayed by this court pending the determination of the instant matter.

Vasquez and Hardiman now contend that the trial justice erred in ordering partial disclosure of the material concerning the polygraph exam. They assert three defenses to the disclosure: (1) that the right to discovery under Rule 16(a) of the Superior Court Rules of Criminal Procedure extends only to information in the possession or control of the state, (2) that to the extent the information includes communications between Hardiman and/or his agent and his client, either explicitly as in the questions asked or implicitly insofar as Vasquez's answers can be inferred, it is shielded by the attorney-client privilege, and (3) that the test results are protected by the work-product doctrine.

Juarez, however, argues that the Superior Court was correct in limiting but declining to quash the subpoena duces tecum. She makes numerous contentions: (1) Rule 16(a) entitles her to disclosure of the subpoenaed material; (2) production of the subpoenaed material is not shielded by the attorney-client privilege, and even if it

---

1. Although this case is captioned *State v. Sharon Juarez et al.*, the true parties in interest are Juarez, Vasquez, and Hardiman.

2. In April of 1989 Perez was found guilty of murder.

3. The trial justice did not address the motion to produce in the order that was issued. Furthermore, it is undisputed that the prosecution itself has no ability to comply and does not possess the information sought by Juarez. Therefore, we shall not address this issue.

4. The State of Rhode Island took no formal position on the motion to quash below, and it has informed this court that it takes no position on this petition for certiorari.

were, Vasquez has waived the privilege; (3) the attorney-client privilege is not absolute and must yield to rights afforded to Juarez by the United States and Rhode Island Constitutions; and (4) the subpoenaed material is not shielded by the work-product doctrine.

■ We shall first address the contentions of the parties pursuant to Rule 16(a). Rule 16(a) provides, in pertinent part, "Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State * * *." As the language indicates, Rule 16 renders discoverable only information that either is in the possession, custody, or control of the state or by the exercise of due diligence may become known to the attorney for the state.

In the case at bar it is undisputed that the state does not possess the subpoenaed material. This court has indicated in the past that a right to disclosure of materials that are controlled by third parties does not arise pursuant to Rule 16(a). *See State v. Waite*, 484 A.2d 887 (R.I.1984), where this court rejected an attempt to disclose material that had been controlled by a third party. Therefore, we find that Juarez is not entitled to discovery of the subpoenaed material under Rule 16(a).

■ We now turn our attention to the assertion of the attorney-client privilege by Vasquez and Hardiman. As we have indicated in *State v. von Bulow*, 475 A.2d 995 (R.I.), *cert. denied*, 469 U.S. 875, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984), the requisite elements of the privilege are as follows:

" '(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [a] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.' " 475 A.2d at 1004–05.

Applying the elements of the privilege to the case at bar, we are satisfied that an attorney-client relationship existed between Vasquez and Hardiman at the time the polygraph test was given. Furthermore, the examiner was acting at the direction of Hardiman and was therefore acting as his agent. The examination was given in the context of preparing a defense for the impending murder trial facing Vasquez. The remaining essential element to be shown, however, is that the privilege has not been waived.

■ Juarez argues that Vasquez waived the attorney-client privilege when Hardiman informed the Attorney General's representative that Vasquez had already taken a polygraph exam. This disclosure was made in response to the state's request that Vasquez undergo such a test before plea bargaining on his pending murder indictment. Vasquez and Hardiman assert that a mere discussion of the subject matter, which does not actually disclose confidential communication, does not, in and of itself, waive the privilege.

This court has stated that "[t]he privilege may be waived * * * when there has been disclosure of a confidential communication to a third party." *von Bulow*, 475 A.2d at 1005. Furthermore, waiver may also occur "by implication": "[W]hen [the client's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final." *Id.* at 1007 (quoting *United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979)).

We are of the opinion that the behavior of Vasquez and Hardiman did not reach that "certain point of disclosure" sufficient to result in a waiver of the privilege. The record before us indicates that during plea negotiations, the state informed Hardiman of its plans to administer a polygraph exam to Vasquez. Hardiman informed the state that Vasquez had already undergone a polygraph exam and that he would not allow the state to administer another exam to his client. We are unaware of any further disclosures. Despite Juarez's assertions of selective disclosure by Hardiman in an effort to influence the plea negotiations, we find nothing in the record to indicate such behavior. Unless it is clear that there has been an impermissible selective use of privileged information, this court will not find a waiver of the attorney-client privilege. We therefore conclude that the subpoenaed material is protected by the attorney-client privilege and such privilege has not been waived.

■ We must now address Juarez's contentions that the attorney-client privilege must yield to the rights afforded her by the United States and Rhode Island Constitutions. She contends that her due-process rights include the right to cross-examine and confront the state's witnesses. This court fully agrees that due process affords such opportunities. However, we disagree with Juarez's next contention that these due process rights compel the breach of the attorney-client privilege in the case at bar.

As Juarez indicates in her brief, this court has held that certain privileges may be found to give way in favor of the confrontation clause. *See, e.g., State v. Parillo,* 480 A.2d 1349 (R.I.1984), where a defendant's constitutional right of cross-examination was violated by the trial court's denial of his motion to obtain certain medical records of the prosecution's key witness.

However, we are of the opinion that the attorney-client privilege should not be breached routinely. Vasquez and Hardiman cite numerous cases in their brief in which courts have refused to permit a breach of the attorney-client privilege. *See*

*Commonwealth v. Hutchinson,* 290 Pa.Super. 254, 434 A.2d 740 (1981), where the Pennsylvania appellate court found the statements of a codefendant, made to a public defender who had represented both defendants, to be protected by the attorney-client privilege. *See also State v. Hitopoulus,* 279 S.C. 549, 309 S.E.2d 747 (1983), where statements by a codefendant to a psychiatrist were found to be protected by the attorney-client privilege. The psychiatrist was examining the codefendant at the request of the codefendant's attorney. *Commonwealth v. Scott,* 503 Pa. 624, 470 A.2d 91 (1983), where a defendant attempted to call a codefendant's attorney to testify regarding exculpatory statements made by the codefendant. The Pennsylvania Supreme Court upheld an assertion of the attorney-client privilege.

One instance in which the attorney-client privilege was breached in favor of the confrontation clause is found in *State v. Cascone,* 195 Conn. 183, 487 A.2d 186 (1985). In *Cascone* the Supreme Court of Connecticut held that the attorney-client privilege may be weighed against the confrontation right and may be breached in particular factual circumstances wherein the benefit to the defendant from disclosure outweighs the injury that would inure to the attorney-client relation. *Id.* at 189, 487 A.2d at 190.

However, there exists a significant factual difference between *Cascone* and the case at bar. In *Cascone* the defendant who sought to breach the privilege actually knew that the codefendant had exonerated him to the attorney who originally represented both of them. Juarez does not possess such information. The Supreme Court of Connecticut, in addressing a similar claim, post-*Cascone,* stated: "In the present case, however, the defendant had no idea of what would be found in Pilotte's summarized statement to his attorney. The defendant could only surmise that some inconsistency or other beneficial disclosure might come to light. We do not believe that mere curiosity should be enough to overcome the attorney-client privilege." *State v. Silva,* 201 Conn. 244, 256, 513 A.2d 1202, 1208 (1986).

In the case at bar Juarez has no knowledge concerning whether useful, impeaching, or exculpatory material will result from the disclosure of the subpoenaed material.

Furthermore, this court has stated in *State v. Brennan*, 526 A.2d 483 (R.I.1987), "Although due-process concerns require a prosecutor to turn over to the defense any exculpatory evidence material to the pending trial, * * * they do not 'extend an open invitation to criminal defendants to comb prosecution files for any or all information that might be remotely useful.'" *Id.* at 487–88 (quoting *State v. Wyche*, 518 A.2d 907, 908 (R.I.1986)).

We are of the opinion that these sentiments are of equal applicability to the case at bar. In these circumstances Juarez is seeking to "comb" through privileged material in the hope that something of value may be found. We cannot condone such action.

■ Last, this court has indicated in *State v. Dery*, 545 A.2d 1014, 1018 (R.I. 1988), that "the introduction of any information regarding polygraph examinations into evidence for any purpose would be likely to mislead the jurors rather than to assist them in the determination of the factual issues involved." The trial justice's order affords Juarez access to the questions asked by the polygraph examiner and the results of the examination. As we indicated in *Dery*, these questions and the results are not admissible evidence in this jurisdiction.[5] Furthermore, Juarez will still have the opportunity to explore Vasquez's motivation for testifying and his general credibility when this matter actually comes to trial. She will not, however, be allowed access to the subpoenaed material.

Therefore, we find that the subpoenaed material is protected by the attorney-client privilege.[6] There being no waiver of that privilege, the material remains protected. Accordingly Vasquez and Hardiman's petition for certiorari is granted. The order of the Superior Court is vacated, and the motion to quash the subpoena duces tecum is granted.

---

**5.** Juarez refers this court to *United States v. Lynn*, 856 F.2d 430 (1st Cir.1988), in which the United States Court of Appeals for the First Circuit found error in the District Court's complete foreclosure of cross-examination on the issue of a witness's polygraph examination. This court is not bound by that decision; however, our holding today is not inconsistent with *Lynn.* In that case the plea agreement between the government and its witness required the witness to submit to a polygraph examination. Furthermore, failure to take or to complete the exam successfully might have resulted in the nullification of the agreement. This was left in the sole discretion of the U.S. Attorney. Therefore, the concerns that the witness might have lied to the government in order to ensure favorable treatment were well-founded. These are not the circumstances present in the case at bar. Vasquez's plea agreement was not premised solely on his taking a polygraph examination. *See United States v. Earley*, 505 F.Supp. 117 (S.D. Iowa 1981), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985), where polygraph-examination results were not a part of a plea agreement and, for that reason, were not admissible for impeachment purposes.

**6.** Because we find that the material ordered to be disclosed by the Superior Court is protected by the attorney-client privilege, there is no need to address the claims made with regard to the work-product doctrine.