STATE

v.

Harold BAILEY.

No. 94–586–C.A.

Supreme Court of Rhode Island.

May 31, 1996.

Aaron Weisman, Asst. Attorney General, for Plaintiff.

Catherine Gibran, Paula Rosin, Asst. Public Defenders, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of the defendant, Harold Bailey, from a judgment of conviction on six counts of an eleven-count indictment charging the defendant with first-degree sexual assault, second-degree sexual assault, and second-degree child molestation. The jury returned guilty verdicts on second-degree child molestation (count 1); two counts of first-degree sexual assault (counts 7 and 8); and three counts of second-degree sexual assault (counts 2, 4, and 9). On two counts charging fellatio (counts 5 and 6), the jury returned a not-guilty verdict. Prior to submission of the case to the jury, the trial justice dismissed count 3, count 10, and count 11 as duplicative of other counts in the indictment.

Thereafter, the trial justice sentenced defendant to thirty years' imprisonment (fifteen to serve) on count 1, the balance suspended with probation; ten years to serve on count 2, concurrently with the sentence on count 1; ten years to serve on count 4, concurrently with counts 1 and 2; thirty years (fifteen to serve), concurrent with the prior sentences on count 7, the balance suspended with probation; thirty years (fifteen to serve), concurrent with the prior sentences, the balance suspended with probation on count 8; and ten years to serve, concurrently with the prior sentences on count 9. We sustain the judgment of conviction. The facts insofar as pertinent to this appeal are as follows.

The complaining witness, Deborah,[1] was born on March 31, 1975, and was eighteen years of age at the commencement of trial. From the age of three Deborah resided with her stepfather, defendant in this case, and with her mother, Donna Jean, and her younger sister, Marilyn,[2] who was born three years after Deborah. When Deborah was approximately seven years old, defendant married Deborah's mother and the couple had a child. Until Deborah attained the age of twelve, defendant was a good father to her and provided for her. She loved and trusted him.

However, from the time of her attaining the age of twelve, defendant sexually molested her in a series of escalating acts until she finally reported the assaults to the Woonsocket police department in October of 1991, when she was sixteen years of age. On a regular basis when she was twelve defendant would come into her room at night while her mother was at work and touch her breasts both over and under her nightgown. When she was between twelve and one-half and thirteen, he would touch and kiss her breasts and touch the inside and outside of her vagina nearly every night. When Deborah attained the age of fifteen, he would perform cunnilingus on her and penetrate her vagina with his fingers and almost every other night would make her "touch his penis until he ejaculated." Deborah attempted to resist by keeping her legs together but defendant would force them apart. She said that she did not resist more forcefully because she feared defendant's violent temper and was afraid of what he might do to her or to her younger sister, Marilyn.

Deborah did not tell anyone out of fear of possible consequences until she attained the age of approximately sixteen and one-half years in October of 1991. At that point she could not stand living with defendant any longer. She ran away to the home of her boyfriend's parents, leaving a note for her mother that she would not return until "this person is gone."

Deborah's mother, Donna, had been married to defendant for ten years before she was informed that her husband had been molesting Deborah. She testified that she confronted him and asked if the accusations were true. He responded that he had been touching Deborah and making her touch him and that "I had her jerk me off a couple of times." He further stated that he had just started teaching Deborah how to use a condom. He later told Donna when she decided to leave the apartment that the molestation was all Deborah's fault and gave justifications for having molested her, including the

---

1. This is a fictitious name.

2. This too is a fictitious name.

suggestion that he was only teaching her how not to get pregnant.

After the report to the Woonsocket police, then detective (later Sergeant) Daniel Pion interviewed Deborah and her mother on October 21, 1991. That same day he took a statement from defendant in response to Deborah's accusations. In the statement defendant corroborated many of the accusations and stated that Deborah had asked him to shave her legs and her pubic hair and asked him to rub cream on her pubic area. He further stated that he placed Deborah's hand on his penis in order for her to masturbate him to a climax and in order to teach her about condoms and safe sex and not to be afraid of ejaculation. His statement went on to recount that he would rub Deborah's vagina, kiss her stomach and breasts, and tell her that she was beautiful because he believed that she was sexually frustrated. This statement was given after *Miranda* warnings and was admitted into evidence by the trial justice.

In support of his appeal defendant raises three issues. These issues will be dealt with in the order of their significance to this opinion. Further facts will be supplied as needed to discuss these issues.

## I

### The Motion to Suppress Defendant's Statement

■ Prior to trial defendant moved to suppress his statement on the ground that it was obtained in violation of the prophylactic rules enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officers who had interviewed defendant testified at the hearing on the motion to suppress. Sergeant Daniel Pion and Officer Richard Deziel of the Woonsocket police department testified that defendant was requested to come to police headquarters in order to discuss Deborah's accusations. They stated that he came to the police station voluntarily. He was not under arrest. Upon his arrival defendant was asked if he wished to make a statement in response to Deborah's allegations. The defendant was invited into a conference room with the two

police officers. Sergeant Pion testified that defendant was free to leave at this point, but nevertheless he read the *Miranda* admonitions to defendant directly from a form that had been prepared by the department for that purpose. This form was later signed and each of the admonitions initialed by defendant. The form contained each of the admonitions required by *Miranda.* After the statement was completed, defendant was asked to review the statement and make any change that he might desire. The defendant reviewed the statement and stated that it was true and that he did not want to change anything. On one occasion during the course of the statement, defendant said, "Well, I shouldn't say this." At this point Sergeant Pion told defendant that he could use the phone and that he did not have to say anything and could stop if he wished to do so. The defendant did not indicate that he desired to stop. He never asked to leave, nor did he ask for an attorney. In response to the officer's attempt to clarify defendant's ambiguous statements, he did not make an unequivocal request for counsel. Indeed, he rejected the officer's offer either to use the telephone or to terminate the interrogation. *See Davis v. United States,* 512 U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

The defendant testified somewhat differently from the officers. He stated that he expressed reluctance to speak during the course of his statement, although he admitted that Sergeant Pion had given him the *Miranda* rights form and that he had signed it. However, defendant argues that the hesitation, the uncertainty, and the reluctance that he manifested from time to time belie his waiver. Also defendant testified that he did ask for an attorney or at least asked whether he should have one present.

After hearing the testimony of the officers and defendant, the trial justice unequivocally found by clear and convincing evidence that Bailey had been given the *Miranda* warnings, that he had signed the rights form, that he had been fully competent and capable of understanding those rights, and had in fact understood them. In respect to the request for counsel the trial justice made the following comments:

"I find that Harold Bailey was not telling the truth when he swore on the stand, that he asked for an attorney before or at the time the rights were read to or read by him. I'm satisfied that his testimony is contradictory to that of the two police officers, both of whom were present at the time, and that the defendant's interest in this case is so high that I should not place any reliance on him.

"Now, I further find that the answers that Harold D. Bailey gave to the questions put to him by Detective Pion on the afternoon of October 21st, 1991 were voluntary in that they were made at a time the defendant fully understood that he did not have to answer any questions, and that he had a right to a lawyer present, and that if he couldn't afford one, one would be presented to him or provided for him. I further find that he understood that if he wanted to stop the interrogation at any time, he could have done so."

■ The findings of historical fact by the trial justice are given great weight and will not be set aside unless they are clearly wrong. *State v. Peabody*, 611 A.2d 826, 835 (R.I.1992); *State v. Killay*, 430 A.2d 418, 421 (R.I.1981). On the basis of the evidence presented at the suppression hearing as corroborated by the rights form that was presented to the trial justice, we believe that his decision was supported by clear and convincing evidence. His findings that the confession was voluntary and that all required admonitions had been given were clearly supported by overwhelming, clear, and convincing evidence.

For purposes of our review we find it unnecessary to respond to defendant's argument that he was in custody at the Woonsocket police station. In view of the fact that the *Miranda* admonitions were given to him and that he was advised of his right to remain silent, his right to counsel, and his right to stop the interrogation at any time, the issue of custody is not relevant and we have therefore assumed without deciding that defendant was in custody at the time the *Miranda* warnings were presented to him. The significance of custody only lies in the fact that it triggers defendant's right to the pro-

phylactic procedures that *Miranda* requires. Since these procedures were observed, the question of whether defendant was in custody is of no consequence to the decision of the trial justice not to suppress the statement.

In denying the motion to suppress, the trial justice did not err.

## II

## The Rule 16 Issue

During the course of the testimony of the complaining witness she recounted the events of defendant's kissing and touching various parts of her body. During the course of the testimony the following colloquy occurred:

"Q. Did he touch any other part of your body other than your breasts when you were thirteen?

"A. Yes. He touched my vaginal area, too.

"Q. Do you remember the very first time he touched your vaginal area?

"A. No, I don't.

"Q. Do you remember how old you were when he would do that?

"A. Yes. Thirteen.

"Q. How often did that happen?

"A. Every other—every night.

\* \* \* \* \* \*

"Q. What would happen when Harold Bailey would touch your vaginal area?

"A. He would slip his hands underneath my underpants.

"Q. And what would he do?

"A. He would just touch there.

"Q. Would he touch you on the outside of your vaginal area?

"A. No.

"Q. What would he do?

"A. He would touch me in the inside."

■ In so stating, the witness went beyond the events charged of second-degree sexual assault. The state had charged defendant with second-degree sexual assault and in its bill of particulars had set forth a touching as opposed to a penetration of the vagina. Deborah's testimony could be construed as

suggesting penetration rather than mere external touching. Counsel for defendant objected to this testimony and moved for a mistrial, specifically citing a discovery violation pursuant to *State v. Concannon*, 457 A.2d 1350 (R.I.1983), as well as asserting that this proof went beyond the bill of particulars under *State v. Brown*, 574 A.2d 745 (R.I. 1990).

The prosecutor countered that she had not been aware of and was surprised at this statement uttered by the complaining witness. She further stated that the evidence was admissible as showing defendant's lewd disposition toward the complaining witness. The trial justice found that there had been no deliberate violation of the discovery rule since the prosecutor was as unaware of this testimony as the defense until the statement had actually been uttered. The trial justice immediately gave a lengthy instruction to the jury stating that it could not consider this evidence in support of any of the charges that had been filed against defendant but only in support of the proposition that the accused had a "so-called lewd predisposition with regard to Deborah." He carefully pointed out that defendant had not been charged with sexual penetration when Deborah was thirteen years of age.

Thus he denied the motion for mistrial and accepted the unexpected testimony only pursuant to Rule 404(b) of the Rhode Island Rules of Evidence as uncharged conduct.

■ The state argues that Rule 16(a) of the Superior Court Rules of Criminal Procedure, which requires the state to make discovery to defendant of all existing materials known to the prosecution, would not apply to unknown and nonexistent information. *State v. Juarez*, 570 A.2d 1118, 1120 (R.I.1990). The state further argues that the prosecution could not in the exercise of due diligence have obtained this information. *See State v. Concannon*, 457 A.2d 1350 (R.I.1983). The sanction of a mistrial would be applicable in case of deliberate violation of Rule 16, *see State v. Darcy*, 442 A.2d 900 (R.I.1982), or in the event of a statement that so inflames the passions of the jury that no limiting instruction would be adequate to cure the prejudice.

*See State v. Brown*, 626 A.2d 228, 233 (R.I. 1993).

■ It may well be argued that admitting this testimony under Rule 404(b) as uncharged conduct may have been less appropriate than the striking of the testimony concerning internal touching with an instruction to the jury to disregard it entirely. However, we are of the opinion that any error in respect to admitting this testimony under Rule 404(b) was not prejudicial in light of the overwhelming evidence in this case, including the statement of defendant himself concerning the abhorrent conduct he had committed with respect to this young girl. The suggestion of a slight penetration rather than an external touching of the vagina could scarcely have inflamed the passions of the jury beyond that level which would be inevitable from the presentation of the totality of evidence in the case.

In denying the motion for mistrial, the trial justice committed no error. In admitting this answer as uncharged conduct, any error was harmless beyond a reasonable doubt.

### III

### The Motion for New Trial

Following the jury verdict defendant made a timely motion for a new trial in respect to count 1 of the indictment that charged second-degree child-molestation sexual assault when Deborah was between twelve and thirteen years of age.

■ The defendant argues that the trial justice overlooked and misconceived relevant and material evidence in passing upon this motion and was otherwise clearly wrong. In support of this motion defendant argues that there were inconsistencies between Deborah's testimony and that of her mother relating to the time frame of the offense. There is no question that Deborah testified that this fondling and touching took place when she was twelve years old. There is also no question that dates supplied by her mother concerning the time during which Deborah shared a room with her sister, the time when the mother worked outside the home and the

shifts that she worked may have suggested dates different from those relied upon by Deborah. It is significant to note that the ingenious argument of appellate counsel was not presented to the trial justice at the hearing on the motion for new trial. Nevertheless, trial counsel for defendant did suggest that the evidence was insufficient to meet the tests set forth in *State v. Dame,* 560 A.2d 330, 333 (R.I.1989).

In response to the argument presented by the trial counsel, the trial justice reviewed the evidence as required by *Dame* and accepted Deborah's testimony "that on some day or date between March 31, 1987 and March 30 of 1988, that is to say while she was twelve years old, the defendant engaged in sexual contact with her by, according to her testimony, touching her breasts in his bedroom." A review of the testimony in this case certainly does not result in absolute precision on the part of Deborah or her mother in relation to times and dates. Inconsistencies may well be found and should be considered and resolved by the triers of fact. The jury considered this evidence and rendered its verdict. The trial justice, after reviewing the evidence, made the following comment in relation to all counts upon which a guilty verdict was rendered: "There is more than enough evidence in this record to have convicted Harold Bailey of the six counts of the indictment. If I were the thirteenth juror I would have voted guilty with the rest of the jury. The motion is denied."

As we have frequently stated, the decision of a trial justice in passing upon a motion for new trial is entitled to great weight and will not be disturbed unless he or she has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong. *Dame,* 560 A.2d at 332–33. Even if the defendant had made the reference-point argument to the trial justice during the motion for new trial, it would not have had affected his careful review of the evidence in the case and his determination that the verdict of the jury was correct. Consequently the trial justice did not commit error in denying the motion for new trial in respect to count 1.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.

BOURCIER and FLANDERS, JJ., not participating.