[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DR. LAMONICA'S MOTION TO COMPEL AND PLAINTIFF'S OBJECTION TO DR. GILLOTTI'S REQUEST. FOR PRODUCTION
In this case, plaintiff Donna Kroha has brought suit, both individually and as Administratrix of the Estate of her deceased daughter, Ashley Eleanor Kroha, to recover money damages from three physicians, defendants C. Bruce LaMonica, M.D., Patrice Gillotti, M.D., and Christina Dezielle, M.D., for alleged malpractice in their care and treatment of her shortly before her daughter was due to be born. In her Revised Amended Complaint dated September 25, 1998, the plaintiff claims that as a result of the defendants' alleged malpractice, she personally suffered painful, disabling, and permanent physical injuries and her daughter, who was a viable fetus when the defendants began to care for her, died in utero.
CT Page 47 The defendants have denied all allegations of negligence.
On November 23, 1999, at the end of the second full day of her deposition, the plaintiff was asked by counsel for Dr. LaMonica if she "ha[d] maintained a journal or record of any of the event we have been talking about during the two sessions of your deposition, notes or a diary or anything like that?" Kroha Deposition (Nov. 23, 1999), p. 110. When the plaintiff replied in the affirmative, the following colloquy ensued:
Q. When did you start doing that?
A. I made a list for my attorney.
Q. When did you do that?
A. When I first started pursuing the case.
Q. That would have been in December or November of 1996?
 A. November of 1996 or December 1996, whenever I started. I'm sorry, November or December of "96, whenever I had my first visit.
 Q. You have maintained that journal from November or December 1996 until the present?
A. No.
Q. When did you stop making any entries in the journal?
A. I can't recall the exact date.
Q. Approximately?
A. Probably January of `97.
 Q. So you maintained the journal for about three months at the outside?
Id., P. 110.
Defense counsel then asked the plaintiff to state "[w]hat kinds of things generically" she recorded in her journal, but was met with an objection by plaintiff's counsel that the journal "was for my [counsel's] benefit only." Id. Defense counsel did not press his inquiry further at CT Page 48 that time.
Instead, defense counsel questioned the plaintiff about the process by which she created and maintained the journal, establishing that she made and stored the journal on a computer, that she printed out a copy of the journal from the computer file and gave it to her attorney, and that the only other person to whom she ever showed the journal was her husband, Donald Kroha. Id., pp. 111-112. The plaintiff testified that the last time she had looked at the journal before November 23, 1999 was before the first session of her deposition, in June of 1999. Id., p. 113.
After Dr. LaMonica's counsel finished questioning the plaintiff, counsel for Dr. Gillotti pursued the following line of questioning about the plaintiff's journal:
 Q. I take it that the journal you kept, where you indicate you kept a list for your attorney, was that list in preparation for any meeting with your attorney?
MR. RENEHAN: Object to the form of the question.
A. Yes.
BY MS. HUNT:
 Q. And I take it you put the list together not having been directed by your attorney to do that; is that correct?
 MR. RENEHAN: Object to the form of the question. You don't have to answer that.
 MS. HUNT: That's an appropriate question. I'm not asking her to tell me the contents of the journal.
BY MS. HUNT:
Q. I'm interested in your testimony. I want to know —
 MR. RENEHAN: I'm instructing her not to answer any questions about this journal. That was done at my request for my benefit.
MS. HUNT: Now that you have nicely coached the witness, CT Page 49 that was going to be my question. That's an appropriate question for her to answer. So I'm going to ask Mrs. Kroha again.
BY MS. HUNT:
 Q. When you made the list for the attorney in preparation for meeting with him, did you make the list on your own or did you make the list at his direction?
A. I made the list on my own.
Id., pp. 114-115. Shortly, thereafter, the deposition concluded.
Almost nine months after the deposition was completed, on or about August 21, 2000, Dr. Gillotti served a Request for Production upon the plaintiff, seeking production of "[t]he journal/diary authored by the plaintiff, Donna Kroha, during the month of November/December 1996 through January referenced at her deposition on November 23, 1999, as described within her Transcript pages 110 to 115." The plaintiff objected to this Request for Production on grounds of attorney-client privilege and the work product doctrine. In that same time frame, on or about September 7, 2000, Dr. LaMonica moved this Court to compel the plaintiff to answer two interrogatories served upon her more than one year before she was deposed concerning any "journal" she had maintained about the events at issue in this case, and to produce any such journal if one in fact existed. In support of this motion, Dr. LaMonica drew the Court's attention to the plaintiff's deposition testimony of November 23, 1999. The plaintiff opposed Dr. LaMonica's motion on the same basis as she had opposed Dr. Gillotti's Request for Production, insisting that it was protected from disclosure by the attorney-client privilege and the work product doctrine.
The Court held an evidentiary hearing on Dr. LaMonica's motion and the plaintiff's objection to Dr. Gillotti's Request for Production on October 23, 2000. At that hearing, the plaintiff testified once again as to how and why she recorded and maintained her journal and the Court, with the parties' agreement, inspected the journal in camera. On the basis of the plaintiff's testimony, both at her deposition and at the hearing before the Court, and the Court's own review of the contents of the journal, the Court concludes that the journal is protected from disclosure under the attorney-client privilege.
The plaintiff testified that she prepared the "journal" at the request of one Attorney Burchetta, a New York lawyer whom she and her husband CT Page 50 jointly consulted about the possibility of suing these defendants in the wake of her daughter's death. Attorney Burchetta requested that she prepare it at the couple's initial meeting with him. Its purpose was to describe in detail the course of her treatment by the defendants, and on that basis to inform the attorney's judgment as to whether or not she "had a case" against them. The plaintiff testified that she gave the journal to her attorney with the expectation that he would keep it confidential. She showed it to her husband expecting that his "involvement was as part of a team approach to the determination as to whether or not litigation was going to be necessary." Hearing Transcript, P. 21.
The Court's in camera examination of the journal confirmed that the document was created not as a contemporaneous account of ongoing care and treatment but as a retrospective summary of critical events in the course of prior treatment. Thus, though the three-page document is undated, it is entirely consistent, in form and content, with the plaintiff's account of how she created it.
 I
The attorney-client privilege shields from disclosure by a client or her attorney all confidential communication made by the client to the attorney for the purpose of seeking the attorney's legal advice. Statev. Turner, 252 Conn. 714, 732-33. ___ A.2d ___ (2000) (quoting State v.Cascone, 195 Conn. 183, 186, 487 A.2d 186 (1985)). The purpose of the privilege is to foster free and effective communication between a client and her attorney so that the latter can have full knowledge of all matters vital to understanding and assessing the former's legal interests before giving her legal advice.
The attorney-client privilege applies with equal force to written as well as oral communications, Trachten v. Boyarsky, 122 Conn. 465,471-72, 190 A. 869 (1937), provided that the writing itself is an attorney-client communication, not merely a preexisting document that is somehow relevant to the client's legal interests. Supplee v. Hall,75 Conn. 17, 22-23, 52 A. 407 (1902)
Thus, documents such as deeds or receipts are not privileged from disclosure because they are not attorney-client communications in and of themselves. See generally Tait's Handbook of Connecticut Evidence, § 5.23.1(c), 3rd ed. 2001. Similarly, reports prepared by or on behalf of persons who anticipate future litigation do not become privileged when given to an attorney unless they have been "requested or procured for the benefit" of the attorney. Id., § 5.23.1(a). (Citing Stanley Works v. New Britain Development Agency,
CT Page 51155 Conn. 86, 95, 230 A.2d 9 (1967);Hurley v. The Connecticut Co., 118 Conn. 276, 284-85, 172 A. 86 (1934)).
The burden of involving the privilege and demonstrating its applicability to a particular communication rests squarely upon the party who seeks to rely upon it to avoid disclosure. State v. Hanna, supra,150 Conn. 457, 466, 191 A.2d 124 (1963)
 II
In this case, the plaintiff argues that her journal is privileged from disclosure because she prepared it at the request of her attorney and delivered it to him with the reasonable expectation that he would keep it confidential, using it only to advise her in connection with the subject matter of this case.
The defendants have responded to this claim in two ways. First, they argue that the journal is a pre-existing document that is not protected from disclosure by the attorney-client privilege because the plaintiff created it on her own, in anticipation of possible litigation. On that score, they rely upon the plaintiff's testimony at her second deposition that she "made the list on [her] own," not "at [the] direction" of her attorney.
The Court is persuaded that notwithstanding her deposition testimony, the plaintiff created her so-called "journal" at the request of her attorney. The deposition question that elicited her answer was at best ambiguous. It asked her to state:
 Q. When you made the list for the attorney in preparation for meeting with him, did you make the list on your own or did you make the list at his direction?
Kroha Deposition (Nov. 23, 1999), p. 115. Selecting one of the two options presented, the plaintiff answered:
A. I made the list on my own.
Id.
The defendants want this Court to interpret this question and answer to mean that the very idea of making the "list" or journal in the first place was the plaintiff's, not that of her attorney's. On that theory they argue that the journal is not an attorney-client communication, but a pre-existing document that is not protected from disclosure by the CT Page 52 attorney-client privilege.
The Court agrees with the plaintiff, however, that her deposition testimony has no such meaning. Instead, when the plaintiff answered counsel's question as she did, she meant only to indicate that she was alone when she wrote the journal, not taking direction from her attorney as to what she should write. This meaning is completely consistent with the sequence of events the plaintiff described, both at her deposition and at the hearing on the motion to compel. In both settings she testified that she wrote the journal at her lawyer's request. In the hearing before this Court, she explained that she wrote it between her first and second meetings with the attorney, when, of course, he was not present to direct her work.
In short, the Court believes the plaintiff's testimony that she wrote the journal at the request of her lawyer, and that she prepared it, not "at [his] direction" but "on [her] own."
 III
The defendants also argue that even if the plaintiff created her journal at the request of her attorney, she waived any claim of confidentiality with respect to it when she showed it to her husband, who is not a party to this case. Though the plaintiff freely acknowledges that she shared her journal with her husband, she contends that such disclosure did not defeat her reasonable expectation of confidentiality or resulting claim of privilege because, at the time, she and her husband were jointly consulting the attorney for legal advice in connection with the subject matter of this case.
In Connecticut, the "attorney-client privilege protects communications between co-defendants and their joint attorney when the conversation relates to their participation in the crime charged." Tait's Handbook ofConnecticut Evidence, § 5.21.5 (citing State v. Cascone, 195 Conn. 183,187, 487 A.2d 186 (1985) Indeed, the privilege applies more broadly to all communications between two or more persons who consult the same attorney on any matter of joint interest between them. Pagano v.Ippoliti, 245 Conn. 640, 649-50, 716 A.2d 848 (1998)
Here, the Court agrees with the plaintiff that when she shared the contents of her journal with her husband, the two of them were actively engaged in seeking representation from the same attorney on a matter of joint interest. Their infant daughter had died in utero, potentially as the result of medical malpractice. As parents of their daughter, both were legally responsible for her medical bills, and either could have been named to administer her Estate. The plaintiff, moreover, had CT Page 53 suffered serious physical injuries and incurred substantial medical bills as a result thereof. The plaintiff's husband therefore had two possible claims to assert in connection with these facts: first, a claim for reimbursement of monies he owed for his wife's medical expenses; and second, a claim seeking damages for loss of consortium. That neither such claim was pursued in this case is without controlling significance. What matters instead is that when plaintiff showed her journal to her husband, she did so in the course and for the purpose of a mutual consultation with counsel on a matter of joint interest.
For the foregoing reasons, the Court hereby DENIES Dr. LaMonica's motion to compel and SUSTAINS plaintiff's objection to Dr. Gillotti's request for production with respect to the plaintiff's journal.
IT IS SO ORDERED the 3rd day of January, 2001.
MICHAEL R. SHELDON, J.