**STATE**

v.

**Joseph M. PAUL.**

No. 00–252–C.A.

Supreme Court of Rhode Island.

Feb. 28, 2002.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This case came before the Court pursuant to the appeal of the defendant, Joseph M. Paul (defendant), from a first-degree murder conviction. The defendant argues that the trial justice erred in denying his pretrial motion to suppress his statements to the police about the murder of James Strauss (Strauss). We disagree and hold that the defendant did knowingly and voluntarily waive his rights during the police interrogation, and thus the admission of his confession was permitted. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

On the afternoon of August 17, 1998, defendant was arrested outside his home at 82 Oniska Street in the Oakland Beach section of Warwick. A few hours before the arrest, Kelly Badmington (Badmington), a friend of defendant's, met with Detective Edward F. Pelletier (Det.Pelletier) of the Warwick Police Department. Badmington told Det. Pelletier that defendant was involved with the disappearance of Strauss. Strauss, another resident of Oakland Beach and a suspected drug dealer, had been reported missing by his mother since August 13, 1998.

Badmington testified that on both August 15 and 16, 1998, defendant said that he had killed Strauss and that he recounted the details of the incident. She said that defendant killed Strauss, in defendant's home because he believed that Strauss was sexually involved with defendant's former girlfriend. Badmington also testified that defendant had killed Strauss in an attempt to rid the community of Strauss's drug dealing and to stop Strauss from tempting him with narcotics. The defendant had an alcohol dependency,

along with a history of cocaine abuse. Armed with this information, the police decided to monitor defendant's residence. At about 1 p.m. on August 17, 1998, defendant left his home through his backyard into an empty lot adjacent to the home. At this time, the surveillance officers intercepted defendant and stopped him. Approximately thirty seconds later, Det. Pelletier arrived at the scene. Detective Pelletier approached the visibly nervous defendant and asked him whether he knew why the police had approached him. The defendant said "because [Jimmy] was missing." The defendant was then advised of his *Miranda*[1] rights and was taken to police headquarters for interrogation.

The defendant was interrogated by Detectives Thomas P. Conroy (Det.Conroy) and Kevin Petit (Det.Petit) of the Warwick Police Department. The interrogation resulted in a statement signed by defendant, disclosing that he had killed Strauss. The statement was accompanied by a signed *Miranda* form, in which defendant acknowledged his constitutional rights.[2] Sometime that afternoon, with search warrant in hand, the police found Strauss's body buried in defendant's basement. The search of the house also produced the murder weapon. Subsequently, defendant was charged with first-degree murder.

During a pretrial hearing, defendant moved to have his statements to the police suppressed, asserting that he did not knowingly and voluntarily waive his constitutional rights. Detective Conroy, Det. Pelletier and defendant testified at the hearing. The testimony focused primarily on the police interrogation. The defendant contested Det. Conroy's version of the events. Concerning the initial statement made to Det. Pelletier, defendant argued that he had been drinking heavily that morning and was intoxicated.

Detective Conroy testified that he advised defendant of his *Miranda* rights. He said that defendant stated that he was not under the influence of alcohol or narcotics. After some dialogue, defendant asked to see his attorney. After defendant's request, Det. Conroy testified that he ceased any further discussion and that he and Det. Petit started to leave the room. At this time, defendant indicated that he did not want to be left alone, and asked the detectives to stay.

Detective Conroy further testified that defendant initially spoke about his family and childhood for about twenty-five minutes, and then wanted to discuss the disappearance of Strauss. Detective Conroy asked defendant if he wanted an attorney present, and defendant responded in the negative. Then Det. Conroy read defendant his *Miranda* rights again, had him read the rights to himself, and sign the form. After defendant signed the form, he admitted his guilt and discussed the circumstances of the killing. As defendant dictated, Det. Petit transcribed the state-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also State v. Bailey,* 677 A.2d 407, 410 (R.I.1996).

2. The *Miranda* form provides:
   "1. I have the right to remain silent. I do not have to give a statement or answer any questions.
   "2. If I give up my right to remain silent, anything I say can and will be used against me in a Court of Law.

"3. I have the right to the presence of a lawyer and to talk with a lawyer before and during any questioning.
"4. If I cannot afford a lawyer and I want a lawyer, a lawyer will be appointed for me at no cost to me before any questioning.
"5. If I do talk to the police, I can stop at any time."
The defendant initialed each phrase, checked an additional line that signified he understood his rights, and signed the bottom.

ment on a form which defendant later signed.

In stark contrast, defendant testified that he had been on a three-day narcotic and alcohol binge, ingesting little food during the time before his arrest. However, defendant did confirm that Det. Conroy apprised him of his rights initially and that he did sign the *Miranda* form. He stated that he signed the statement out of confusion because he was drunk, tired and thirsty. The crux of defendant's testimony focused on the confession form, claiming that it was blank when he signed it. After the trial justice considered the testimony and relevant case law, he denied the motion to suppress.

At trial, defendant argued the defense of diminished capacity. Both parties proffered expert witnesses to testify about defendant's ability to form the specific intent to murder. The jury ultimately believed the opinion of the prosecution's expert that defendant did not suffer from diminished capacity and that he had the mental capacity to form intent. The jury thus, found defendant guilty of first-degree murder. The defendant was sentenced to life in prison, and he timely appealed.

## II

## The Motion to Suppress Defendant's Statements to Police

The defendant argues that the trial justice erred in denying the motion to suppress because (1) Det. Pelletier acted improperly by asking defendant a question at the scene the of arrest, and thus elicited an incriminating response prior to *Miranda* warnings, (2) the initial illegality was further exploited by police when they took the statement from defendant, despite his invocation of the right to counsel, and (3) considering the totality of the circumstances, he did not knowingly and voluntarily waive his constitutional rights. We disagree.

■ The state argues that since defendant's first two arguments raise the purported illegality of the initial statement, he is precluded from arguing these points because the issue was not raised during the suppression hearing. We agree with the state's position. "According to our well-settled 'raise or waive rule,' issues that were not preserved by a specific objection at trial 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Briggs*, 787 A.2d 479, 484 (R.I.2001) (quoting *State v. Oliveira*, 774 A.2d 893, 907 (R.I.2001)).

■ The record is devoid of any reference to this statement, other than Det. Pelletier's testimony that defendant had, in fact, made it. Although the trial justice did say that "I don't need any arguments. I have the testimony fresh in mind," this did not preclude defendant from arguing that the trial justice should have considered the admissibility of the statement. The trial justice followed his reasoning by asking both counsel whether there were any further pretrial matters, to which defense counsel answered in the negative. This failure precludes defendant from presenting these arguments now.

■ Regardless, Det. Pelletier's question to defendant did not invite the level of inculpation requiring *Miranda*. Simply inquiring about defendant's knowledge of why the police would be at his residence that morning is a preliminary question. The question "[d]o you know why we're here" invites only a "yes" or "no" answer, it is not an invitation for defendant to incriminate himself. *See Robertson v. United States*, 429 A.2d 192, 195 (D.C.1981). Furthermore, the constitutionality of the initial statement has no effect on additional

statements made by defendant because he was apprised of his *Miranda* rights four times thereafter. This Court heeds the United States Supreme Court's teaching that a "suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Oregon v. Elstad,* 470 U.S. 298, 318, 105 S.Ct. 1285, 1298, 84 L.Ed.2d 222, 238 (1985).

■ "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Id.* at 314, 105 S.Ct. at 1296, 84 L.Ed.2d at 235. "[T]he admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Id.* at 309, 105 S.Ct. at 1293, 84 L.Ed.2d at 232. We now turn to the statements defendant made at the police station.

■ This Court has stated:

"[when] deciding a *motion* to suppress a confession, a trial justice can admit the confession against the defendant only 'if the state can first prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his [or her] constitutional rights expressed in *Miranda v. Arizona.*' * * * When this Court reviews a trial justice's denial of a motion to suppress, we give deference to the trial justice's factual findings and will reverse them only if they are clearly erroneous. * * * The question of whether a waiver of constitutional rights was voluntary, however, is a legal question * * * that we review *de novo.*" *State v. Torres,* 787 A.2d 1214, 1224–25 (R.I.2002) (quoting *State v. Dumas,* 750 A.2d 420, 423 (R.I.2000)).

The determination of voluntariness is made on the basis of all of the facts and circumstances, including the behavior of defendant and the police, and the ultimate test is whether defendant's statements were the product of "'free and rational choice'" or the result of police coercion that overcomes defendant's will at the time of confession. *Torres,* 787 A.2d at 1224–25; *see also State v. Briggs,* 756 A.2d 731, 738 (R.I.2000).

In the instant case, the evidence in the record amply supports the fact that defendant knowingly and voluntarily waived his rights. After hearing the testimony of Det. Pelletier, Det. Conroy and defendant, the trial justice determined that defendant properly had been apprised of his *Miranda* rights and that he subsequently knowingly waived those rights. He credited Det. Conroy's testimony about the circumstances surrounding the interrogation, saying that defendant previously had invoked his right to counsel, but then initiated a conversation with the detectives that led to his confession. The trial justice further said that "[t]here is absolutely no credible evidence before me which in any way suggest[s] that the police officers mistreated, or otherwise created a coercive atmosphere at the police station."

■ Furthermore, the trial justice addressed the possibility that the confession resulted from the effects of the alcohol or a mental imbalance. He noted that both Det. Conroy and Det. Pelletier, both experienced police officers in determining behavior influenced by narcotics and alcohol, testified that defendant did not appear to be incapacitated. Moreover, he noted that this imbalance would not preclude the admissibility of the confession. Finally, the trial justice stated that defendant had been aware of his rights before this particular incident since he had been arrested and

 

aided by counsel in the past. "Having reviewed the trial justice's determination as to the historical facts relevant to the voluntariness of a confession, this Court undertakes a second analysis and exercises its independent judgment in determining whether those historical facts establish a deprivation of constitutional rights." *Briggs*, 756 A.2d at 738 (quoting *State v. Humphrey*, 715 A.2d 1265, 1274 (R.I. 1998)). In exercising our independent judgment, we note that "[a] statement is involuntary if it is extracted from the defendant by coercion or improper inducement, including threats, violence, or any undue influence that overcomes the free will of the defendant." *Id.* (quoting *Humphrey*, 715 A.2d at 1274).

In the instant case, after applying the law to the historical facts found by the trial justice, we hold that there is no evidence in the record to indicate that defendant was coerced into confessing against his free will. There is ample evidence that defendant had been apprised of his rights four times before confessing. It is apparent that defendant understood these rights and voluntarily waived them.

We also note that the defendant's invocation of the right to counsel did not preclude the subsequent testimony. "Even after a suspect has requested an attorney, he may still waive his constitutional rights if he knowingly, voluntarily, and intelligently chooses to speak to the police." *State v. Halstead*, 414 A.2d 1138, 1150 (R.I.1980) (citing *State v. Graham*, 59 N.J. 366, 283 A.2d 321, 327 (1971)). Furthermore, considering the possibility of the defendant's intoxication, "proof of intoxication alone, absent a showing of coercive police activity, is not sufficient to suppress a confession." *State v. Page*, 709 A.2d 1042, 1045 (R.I.1998) (quoting *Brown v. Moran*, 534 A.2d 180, 183 (R.I.1987)). The record is devoid of any coercive police activity. Thus, the defendant knowingly and voluntarily waived his rights.

### Conclusion

Accordingly, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case shall be returned to the Superior Court.