STATE OF CONNECTICUT *v.* JAMES EGAN
(12389)

DUPONT, C. J., and HEIMAN and SPEAR, Js.

Argued December 8, 1994—decision released March 14, 1995

*Francis J. DiScala,* with whom was *Abram Heisler,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Philip D'Eramo,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from a judgment of conviction of sexual assault in the second degree in violation of General Statutes (Rev. to 1991) § 53a-71 (a) (1).[1] On appeal, the defendant claims that the trial court improperly (1) found that he had waived the social worker-client privilege and (2) admitted into evidence a partial tape recording of his conversation with the police.[2] We affirm the judgment of the trial court.

---

[1] General Statutes (Rev. to 1991) § 53a-71 (a) provides in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[2] At oral argument, the defendant withdrew his claim that the trial judge's absence from the courtroom during the voir dire violated his constitutional right to a fair and impartial trial. We, therefore, do not review this claim.

The jury reasonably could have found the following facts: The victim was the thirteen year old daughter of the defendant's girlfriend. On January 10, 1992, the defendant offered to drive the victim to her friend's house. On the way to the friend's house, the defendant stopped at a store. After making a purchase, the defendant drove to the far corner of the store's dimly lit parking lot. The defendant began touching the victim's breasts on the outside of her blouse and then again under her blouse. The defendant proceeded to rub her vaginal area and inserted his finger in her vagina. He told the victim not to tell her mother and then drove her to her friend's house.

At her friend's house, the victim began crying and related the incident to her friend. At school on the following Tuesday, January 14, someone gave the school psychologist a note that the victim had written to a friend about the incident. The psychologist called the victim into his office, and she described the event to him. The victim's mother was called to the school, and the victim told her what had occurred.

The defendant and the victim's mother met a few days later for dinner. During this meeting, the defendant told the victim's mother that he did not remember molesting her daughter, but that if she said it was true he must have done it because the victim would not lie.

I

The defendant first claims that the trial court improperly found that he had waived his social worker-client privilege and thus incorrectly admitted into evidence the testimony of a social worker regarding an interview that she had with the defendant. We are not persuaded.

The following additional facts are necessary to the disposition of this issue. On March 24, 1992, the defend-

ant's attorney referred him to the Meriden-Wallingford sexual offenders program for evaluation. A social worker met with the defendant, evaluated his condition and discussed the incident with him. The social worker prepared a report, and in June, 1992, the defendant's attorney sent a copy of the report to the victim's mother. The mother subsequently sent the report and the attorney's letter to the state's attorney's office.

The defendant argues that the social worker's evaluation was privileged under both General Statutes § 52-146q[3] and the attorney-client privilege. The defendant spoke with the social worker in late March, 1992, but § 52-146q, which codified the social worker-client privilege, was not enacted until June 22, 1992, with an effective date of July 1, 1992. Therefore, because the communication was made before the statute was in existence, the defendant's communication was not privileged under § 52-146q.

The communication, however, was privileged under the common law attorney-client privilege because the defendant met with the social worker at his counsel's behest. "In *State* v. *Toste*, 178 Conn. 626, 628, 424 A.2d 293 (1979), we joined the majority of jurisdictions in holding that [w]here a psychiatric expert, whether psychiatrist or psychologist, is retained by a criminal defendant or by his counsel for the sole purpose of aiding the accused and his counsel in the preparation of

---

[3] General Statutes § 52-146q (b) provides in pertinent part: "All communications and records shall be confidential and, except as provided in subsection (c) of this section, a social worker shall not disclose any such communications and records unless the person or his authorized representative consents to such disclosure. Any consent given shall specify the individual or agency to which the communications and records are to be disclosed, the scope of the communications and records to be disclosed, the purpose of the disclosure and the expiration date of the consent. A copy of the consent form shall accompany any communications and records disclosed. . . ."

his defense, the attorney-client privilege bars the state from calling the expert as a witness." (Internal quotation marks omitted.) *State* v. *Ross*, 230 Conn. 183, 211, 646 A.2d 1318 (1994). This privilege, however, is not absolute, and a party seeking to invoke the privilege must act so as to maintain "a justified expectation that his communications would not be publicly disclosed . . . ." *State* v. *White*, 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975).

The defendant failed to maintain a justified expectation of confidentiality because he released the social worker's report to the victim's mother without any restrictions as to its use. Because the defendant had effectively waived his attorney-client privilege with regard to his conversations with the social worker, the trial court properly admitted the social worker's testimony into evidence.

## II

The defendant claims that the trial court improperly admitted into evidence a tape recording of a conversation he had with a Westport police detective. He argues that because one hour of the interview was not recorded due to police negligence, the remaining thirty minutes of the interview, which was recorded, should not have been admitted as it was unreliable and prejudicial and in violation of his state and federal due process rights.[4]

Whether a recording or part of a recorded statement should be admitted into evidence is within the trial

---

[4] We choose not to review either the federal or state constitutional claims because the defendant, by failing to cite any legal argument or authority, did not adequately brief the issues. See *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); *New Haven Firebird Society* v. *Board of Fire Commissioners*, 32 Conn. App. 585, 591, 630 A.2d 131 (1993).

court's discretion. *State* v. *Hauck*, 172 Conn. 140, 149, 374 A.2d 150 (1976). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Carr*, 172 Conn. 458, 464, 374 A.2d 1107 (1977).

In light of this deferential standard, we conclude that the trial court did not abuse its discretion by admitting the partial tape into evidence. The defendant claims that the unrecorded portion of the interview may have shown that he was intoxicated during the interview and that the interviewing detective used unfairly suggestive methods of interrogation. During the hearing on the motion to suppress, the trial court heard testimony from both Detective Anthony Giunta and the defendant. From this testimony, the court concluded that under the totality of the circumstances the tape should be admitted. In addition, the jury heard testimony from Giunta regarding what had transpired during the entire interview. At trial, the defendant testified and gave his account of the interview. The jury also had before it the defendant's written statement. This information provided the jury with a sufficient background to evaluate the reliability of the tape as well as reconstruct the entire interview, including the unrecorded portion of the interview. Given these safeguards, we conclude that the trial court did not abuse its discretion by admitting the incomplete tape recording.

The judgment is affirmed.

In this opinion the other judges concurred.