WILLIAM A. OLSON *v.* ACCESSORY CONTROLS AND
EQUIPMENT CORPORATION ET AL.
(AC 18324)

Foti, Spear and Hennessy, Js.

Argued April 22—officially released August 17, 1999

*Alan I. Scheer*, with whom were *Christopher M. Haddad* and, on the brief, *Michael N. LaVelle*, for the appellant (plaintiff).

*Richard D. O'Connor*, with whom were *Glenn A. Duhl* and, on the brief, *Edward F. O'Donnell* and *George J. Kelly, Jr.*, for the appellee (named defendant).

*Lawrence S. Coburn*, pro hac vice, with whom were *Stephen Sinatro* and, on the brief, *Michael D. O'Connell*

and *Julia B. Morris*, for the appellee (defendant Teleflex Lionel-Dupont S.A.).

*Opinion*

FOTI, J. The plaintiff, William A. Olson, appeals from the judgment of the trial court dismissing his complaint against the defendant Teleflex Lionel-Dupont S.A. (Teleflex), and the defendant Accessory Controls and Equipment Corporation (Accessory Controls). On appeal, the plaintiff claims that the trial court improperly (1) granted Teleflex's motion to dismiss based on lack of personal jurisdiction, (2) granted Accessory Controls' motion for a protective order with respect to certain information based on the attorney-client privilege, (3) granted Accessory Controls' motion in limine and (4) granted Accessory Controls' motion to dismiss. We affirm the judgment of the trial court.

The following facts, taken largely from the allegations contained in the plaintiff's complaint, are relevant to our resolution of this appeal. In December, 1981, the plaintiff was employed by Accessory Controls as an engineering technician in Accessory Controls' Windsor plant. Accessory Controls manufactured, among other things, air conditioning equipment, jet air starters and ground power units for airplanes. By 1985, the plaintiff had been promoted to plant manager and was responsible for the manufacturing operations at Accessory Controls. The plaintiff held this position at all times relevant to the allegations in his complaint.

On or about January 30, 1990, the state department of environmental protection (department) issued an order to Accessory Controls requiring it to submit a report to the department concerning the storage, disposal and removal of hazardous waste at the Windsor plant. After receiving the order, Accessory Controls engaged Carol W. Briggs, an attorney, to provide it with legal advice on how to proceed with the order. In turn,

Briggs hired Environmental Management and Compliance Corporation (Environmental Management), and its subcontractor Soils Engineering Services, Inc. (Soils Engineering), to conduct an investigation and to provide Accessory Controls and Briggs with information.

A preliminary environmental investigation was performed by Environmental Management and Soils Engineering. On or about June 7, 1990, Environmental Management and Soils Engineering issued a preliminary report regarding the Windsor plant. That report, which is referred to by the parties as the Diaz report, was submitted to Accessory Controls and shared with the plaintiff in his capacity as plant manager. According to Accessory Controls, however, the Diaz report contained information about areas in the Accessory Controls plant that were not the subject of the department's inquiry. In response, Briggs identified the portions of the Diaz report that were not responsive to the department's request, information that she then communicated to Accessory Controls and to Environmental Management.

Accessory Controls asserts that it became clear that Environmental Management would be unable to separate the responsive information in the Diaz report, which the department sought, from the nonresponsive information. On June 22, 1990, Briggs then sent Environmental Management a letter reflecting Brigg's position as to whether the Diaz report should be released to the department. That letter is referred to by the parties as the Briggs notice. Accessory Controls then retained another environmental consulting firm, Environmental Laboratories, Inc. (Environmental Laboratories), to conduct a second evaluation of the Windsor plant. Accessory Controls then submitted the report generated by Environmental Laboratories to the department in compliance with the original department order. The June 7, 1990 Diaz report was never submitted to the department.

Thereafter, and according to the plaintiff's complaint, the defendant Teleflex, a French corporation, acquired an ownership interest in Accessory Controls. In February, 1992, Teleflex's representatives Francois Calvarin and Alex Reese visited the Windsor plant as part of a postacquisition review of Accessory Controls' operations. While there, Calvarin and Reese questioned the plaintiff about Accessory Controls' prior practices with regard to the storage and disposal of toxic and hazardous waste at the plant. Calvarin and Reese encouraged the plaintiff to cooperate with their investigation by promising the plaintiff that his communications with them would be confidential and would not be shared with Accessory Controls' management. They further assured him that his communications with them would not be the subject of reprisal or other negative employment action.

Relying on Calvarin and Reese's assurances, the plaintiff disclosed to them that there had, in fact, been improper storage and disposal of toxic and hazardous waste at the Windsor plant. The plaintiff further advised them of the existence of the June 7, 1990 Diaz report submitted to Accessory Controls by Environmental Management and Soils Engineering. The plaintiff asserts that despite their assurances, Calvarin and Reese communicated to senior management at Accessory Controls the information that the plaintiff had provided them.

According to the plaintiff, upon learning of his disclosures to Calvarin and Reese, Accessory Controls commenced a campaign of retaliation against the plaintiff with the apparent goal of forcing him to resign or, in the alternative, to provide Accessory Controls with a justification for dismissing him. On February 12, 1993, following the unsuccessful campaign to force him to resign, Accessory Controls dismissed the plaintiff under

the pretext that his position had been eliminated. Following his termination, the plaintiff commenced this present suit against Accessory Controls and Teleflex.

In count one of his complaint, the plaintiff claimed that Accessory Controls had wrongfully terminated his employment in that his dismissal "contraven[ed] public policy with respect to the environmental laws and regulations of the state of Connecticut in that [his] dismissal was in retaliation for [the] plaintiff's report of the environmental hazards to the [Teleflex] representatives." In count two, the plaintiff brought an action against Teleflex sounding in negligent misrepresentation. He claimed that the statements made by Calvarin and Reese that their communications with the plaintiff would be confidential and would not be shared with the president and chief executive officer of Accessory Controls, and that the plaintiff's revelations would not be the subject of reprisal or other negative employment action contained false information. The plaintiff sought reinstatement to his former position, back pay and damages.

In response to the plaintiff's complaint, Teleflex filed a motion to dismiss claiming a lack of personal jurisdiction. In support of its motion, Teleflex claimed that it was a French corporation with virtually no contact with Connecticut. It asserted that the only conduct that could arguably provide a basis for establishing personal jurisdiction would be "tortious conduct" within the state of Connecticut by Teleflex or its employees. Teleflex argued, however, that the plaintiff had failed to allege sufficient specific facts in his complaint that would establish such a basis. On April 12, 1995, the trial court agreed and granted Teleflex's motion to dismiss.

In the course of the remaining litigation between the plaintiff and Accessory Controls, Accessory Controls

filed a motion for a protective order, pursuant to Practice Book § 13-5,[1] seeking to preclude the plaintiff and his attorneys from disclosing, inter alia, oral and written communications that occurred between the plaintiff and Accessory Controls' attorneys made for the purpose of conveying legal advice. Accessory Controls also sought the return of all documents containing such communications. In a memorandum of decision dated April 19, 1996, the trial court granted Accessory Controls' motion for a protective order finding that the documents sought were, in fact, protected by the attorney-client privilege and that the crime fraud exception was not applicable under the facts of the case.

Prior to jury selection, Accessory Controls filed a motion in limine, asking the trial court to adopt the earlier protective order and to exclude, from trial, any of the information previously determined to be protected by the attorney-client privilege. Thereafter, the trial court adopted the findings contained in the earlier protective order and prohibited any use or reference to either the Diaz report or the Briggs notice, or the information they contained. Accessory Controls then moved orally to dismiss the action, arguing that,

[1] Practice Book § 13-5 provides: "Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the judicial authority; (6) that a deposition after being sealed be opened only by order of the judicial authority; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the judicial authority."

because of the trial court's evidentiary ruling to exclude from disclosure the information contained in the protective order, the plaintiff would be unable to present relevant material facts and that it would be impossible for the plaintiff to present a prime facie case. The plaintiff also joined in asking the trial court to rule on the motion. The trial court then granted Accessory Controls' motion dismissing the plaintiff's complaint, and this appeal followed.

I

The plaintiff first claims that the trial court improperly granted Teleflex's motion to dismiss based on lack of personal jurisdiction. We do not agree.

On April 12, 1995, the trial court granted Teleflex's motion to dismiss. The trial court found that Teleflex was a foreign corporation located in Paris. It found also that the plaintiff, through its complaint, had at least initially set forth the "necessary [allegations] of jurisdictional fact" that would allow the trial court to establish personal jurisdiction over Teleflex under General Statutes § 33-929. The trial court then found, however, that because Teleflex submitted "competing affidavits," the plaintiff, who submitted no affidavits or supporting material, would not be able to rely on the conclusory allegations in his complaint to establish jurisdiction.

In support of its ruling, the trial court went on to point out that "each of the [Teleflex] representatives, Mr. Calvarin and Mr. Reese, have submitted affidavits containing explicit and affirmative assertions that any communications made to them by the plaintiff regarding hazardous waste and improper storage of material were not communicated in any way to the plaintiff's employer before his termination. Mr. [Alain] Clarou the president of [Teleflex] submitted an affidavit in which he states that neither he nor any other employee of [Teleflex]

communicated the [plaintiff's] allegations to [the plaintiff's] employer until after litigation was threatened. Mr. [Richard] Stern the president of [Accessory Controls] submitted an affidavit saying he received no such information from [Teleflex] or any of its agents prior to [the plaintiff's] employment termination in February of 1993.

"The plaintiff has submitted no counteraffidavit to rebut these assertions and his courtroom testimony on the issue of the necessary jurisdictional facts was just as conclusory as the allegations of his complaint. The court believes it has no other choice but to dismiss the complaint against the defendant foreign corporation." We agree with the conclusion of the trial court.

"Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss. . . . When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Citation omitted; internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 605–606, 674 A.2d 426 (1996).

"Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction." *Lombard Bros., Inc.* v. *General Asset Management Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983). Here, the trial court found that the plaintiff had failed to prove that the requirements of Connecticut's long-arm statute, § 33-929, had been met. It, therefore, did not reach the issue of whether the exercise

of personal jurisdiction over Teleflex would violate constitutional principles of due process. Because we agree with the trial court's determination, we similarly limit our analysis.

Practice Book § 10-30 governs motions to dismiss. "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." *Carl J. Herzog Foundation, Inc.* v. *University of Bridgeport*, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) *Discover Leasing, Inc.* v. *Murphy*, 33 Conn. App. 303, 306–307, 635 A.2d 843 (1993).

"If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction." *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 607. In this case, the trial court not only reviewed the allegations contained in the plaintiff's complaint and the affidavits submitted by Teleflex in support of its motion to dismiss, but conducted an evidentiary hearing as well. It is against this backdrop that we review the trial court's findings.

Pursuant to § 33-929 (f) (4), a foreign corporation is subject to suit in Connecticut if the cause of action in question arises "out of tortious conduct [committed] in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." The plaintiff alleged that the tortious conduct committed by Teleflex in Connecticut involved

negligent misrepresentation. The gravamen of the plaintiff's claim is that the statements made by Calvarin and Reese that the plaintiff's communications with them would be confidential and would not be shared with the president of Accessory Controls, and that the plaintiff's revelations would not be the subject of reprisal or other negative employment action contained false information. The plaintiff alleged that following his conversation with Calvarin and Reese, during which they promised the plaintiff that his communications would be confidential, "the information supplied by the plaintiff to [them] *was communicated to senior management* of [Accessory Controls] including [its] president and CEO, Richard Stern." (Emphasis added.)

We agree with the trial court that the necessary jurisdictional fact, i.e., a communication *by* Calvarin and Reese of the information supplied by the plaintiff to Accessory Controls management following a promise of confidentiality, "is only hinted at." Nevertheless, we recognize that "[w]hen a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light." *Reynolds* v. *Soffer*, 183 Conn. 67, 68, 438 A.2d 1163 (1981). We, therefore, determine that the plaintiff has at least alleged that Teleflex, through its employees, *did engage in tortious conduct within* the state of Connecticut. This, however, does not end our inquiry.

Attached to Teleflex' motion to dismiss were the affidavits of Calvarin, Reese and Stern in which all three individuals denied that any such communications took place. Calvarin and Reese both claimed that any allegations made to them by the plaintiff regarding the improper disposal of hazardous waste were not communicated to Accessory Controls prior to the plaintiff's termination. Clarou, the president of Teleflex, submitted an affidavit corroborating that claim. Similarly,

Stern's affidavit supports the claim that he received no such information from Teleflex or any of its agents prior to the plaintiff's termination.

In contrast, the plaintiff has not submitted any counteraffidavits refuting those claims. While he disputes the assertions contained in the affidavits submitted by the defendants, he relies solely on the allegations contained in his complaint and has submitted no further evidence to establish the necessary jurisdictional basis for his claim against Teleflex. "Where the facts necessary to determine jurisdiction are disputed, due process requires that a trial-like hearing be held, [at the request of either party] in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. *Standard Tallow Corp.* v. *Jowdy,* [190 Conn. 48, 56, 459 A.2d 503 (1983)]." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.,* supra, 236 Conn. 608 n.10. While an evidentiary hearing was held in which the plaintiff testified that he was terminated shortly after his meeting with Calvarin and Reese, the trial court found that his "testimony on the issue of the necessary jurisdictional facts was just as conclusory as the allegations of his complaint."[2] Our

---

[2] We recognize that *Standard Tallow Corp.* v. *Jowdy,* supra, 190 Conn. 56, contemplated that when jurisdictional facts are in dispute, "a trial-like hearing . . . in which an opportunity is provided to present evidence and to cross-examine adverse witnesses" should be held. In *Knipple* v. *Viking Communications, Ltd.,* supra, 236 Conn. 602, 608 n.10, however, our Supreme Court explained that such an evidentiary hearing need only be held "at the request of either party . . . ." In this case, only a limited evidentiary hearing was held in which the plaintiff was the sole witness. The defendant was permitted to present evidence, by way of affidavits, and was not required to produce witnesses, ostensibly depriving the plaintiff the opportunity of cross-examination.

An examination of the transcript, however, reveals that the limited scope of the evidentiary hearing was agreed to by the parties. Both parties agreed that the trial court's decision would be based solely on the testimony of the plaintiff and the affidavits of Teleflex and Accessory Controls employees. In light of our Supreme Court's recognition that such a hearing need be held only "at the request of either party," it follows that the parties can similarly agree to limit its scope. Id. We find, therefore, that the limited scope of the evidentiary hearing was not improper.

examination of the plaintiff's in-court testimony supports that conclusion.[3]

Again, "[i]f a challenge to the [trial] court's personal jurisdiction is raised by a defendant, [as in this case] . . . the plaintiff must bear the burden of proving the court's jurisdiction." Id., 607. The plaintiff has not done so. We conclude, therefore, that the trial court did not improperly dismiss the plaintiff's complaint against Teleflex on the basis of the plaintiff's failure to present facts sufficient to establish the trial court's jurisdiction.

## II

The plaintiff next claims that the trial court improperly granted Accessory Controls' motion for a protective order with respect to certain reports and correspondence based on the attorney-client privilege.[4] We do not agree.

Initially, it is important to define the plaintiff's specific claims on appeal. While Accessory Controls' July 14, 1995 motion for a protective order sought to prevent the disclosure of various documents, as well as a request that the record in the pending action between the plaintiff and Accessory Controls be sealed, the plaintiff's

[3] Our examination of the plaintiff's testimony discloses that he offered no direct evidence that Calvarin or Reese ever disclosed the contents of their conversation with the plaintiff to anyone at Accessory Controls. The plaintiff merely testified that following his disclosure of information to Calvarin and Reese, he began to be harassed by Accessory Controls' management and was eventually fired.

[4] In addition to arguing that the documents in question are not protected by the attorney-client privilege, the plaintiff argues that the documents are not covered by the work product doctrine. The trial court, however, did not rule whether the documents were covered by the doctrine, noting that it did not analyze this case "on the basis of the work product claim by the defendant." Because we agree with the trial court that the documents in question were, in fact, covered by the attorney-client privilege, we need not determine whether they are similarly protected under the work product doctrine.

claims on appeal are more limited. As explained previously, counsel for Accessory Controls hired Environmental Management, and its subcontractor Soils Engineering, to prepare a report to aid Accessory Controls and its attorney in their response to a department order that requested a detailed account concerning the hazardous waste storage and disposal procedures at the Windsor plant. This report generated by Environmental Management and Soils Engineering and submitted to Accessory Controls and Briggs, Accessory Controls' attorney, is referred to by the parties as the Diaz report.

Following the issuance of the Diaz report, Briggs sent a letter to Environmental Management concerning its contents. The letter referenced Briggs' earlier request that the Diaz report be "separat[ed]" so as to ensure that Accessory Controls' reply to the department order was responsive. This letter is referred to by the parties as the Briggs notice. On appeal, the plaintiff challenges only the trial court's decision to protect from disclosure the Diaz report and the Briggs notice. We conclude that such information is protected.

Generally, "[t]he attorney-client privilege protects communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice. *State* v. *Cascone,* 195 Conn. 183, 186, 487 A.2d 186 (1985)." *Ullmann* v. *State,* 230 Conn. 698, 711, 647 A.2d 324 (1994). Thus, while this well established rule is often expressed in terms of protecting communications from the client to the attorney, our Supreme Court has noted that "[a] communication *from* attorney *to* client solely regarding a matter of fact would not ordinarily be privileged, *unless it were shown to be inextricably linked with the giving of legal advice."* (Emphasis added.) Id., 713. "The privilege exists to protect not only *the giving* of professional advice to those who can act on it but also the giving of information to the lawyer to enable him [or her] to give sound and

informed advice." (Emphasis added; internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 157, 714 A.2d 664 (1998).

Furthermore, the attorney-client privilege protects communications in circumstances where the client is a municipal or corporate entity, rather than an individual. Id., 158. The privilege, therefore, potentially applies[5] in this case despite the fact that Briggs was hired by, and a representative of, Accessory Controls, itself a corporate entity, and despite the fact that the communication was not made *by* the client itself *to* the attorney.

---

[5] To determine whether the attorney-client privilege applies in a particular case where the "client" seeking protection is a corporate entity, our Supreme Court set forth a four part test. In sum, "communications to an attorney for a public agency [or corporate entity] are protected from disclosure by privilege if the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." (Internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159. Here, we find that although the trial court did not specifically apply this test in determining whether the information sought was protected by the attorney-client privilege, the facts of this case support the conclusion that the test is, in fact, satisfied.

First, the trial court found that Briggs was hired directly by Accessory Controls to represent it in its dealing with the department. Second, the communication was made from Environmental Management to Briggs, and eventually to the plaintiff and other current employees of Accessory Controls. Third, the communications in question, both the Diaz report and the Briggs notice, related to the legal advice sought by Accessory Controls from Briggs. In fact, the sole purpose of the relationship between Accessory Controls and Briggs and, conversely, between Briggs and Environmental Management, was to provide Accessory Controls with legal advice on how to respond to the department order.

Lastly, the communications were made in confidence. In fact, as discussed at length below, the trial court found that a letter from Briggs to Environmental Management was "replete with admonitions that all communications with respect to the Environmental Management employment between the president of Environmental Management and his office and with the law firm representing Accessory Controls and between Environmental Management and any attorney agent or employee acting for Accessory Controls are to be confidential and made solely so that counsel for Accessory Controls can give Accessory Controls legal advice."

So, while communications from an attorney to a corporate entity can potentially fall under the attorney-client privilege, this does not end our inquiry. Here, the information sought by the plaintiff was not communicated directly from Briggs, the attorney, to the client, Accessory Controls. Instead, the communication took place between Briggs and Environmental Management, an "expert" hired by Briggs and Accessory Controls to assist Briggs in providing Accessory Controls with legal advice. In short, the information sought by the plaintiff is comprised of communications between an attorney and the attorney's agent which was necessary to assist that attorney in the representation of its client.

While we are unaware of any case dealing directly with the issue before this court, i.e., the application of the attorney-client privilege to communications between an attorney and its agent necessary for proper representation of the attorney's client, we are persuaded that the attorney-client privilege is broad enough to cover the circumstances arising in this case. For example, in *State* v. *Toste*, 178 Conn. 626, 424 A.2d 293 (1979), a consulting psychologist was called on to examine a criminal defendant prior to trial. At trial, over the defendant's objection, the psychologist was permitted to testify as a state's witness concerning the defendant's mental state. The defendant had argued that the admission of the psychologist's testimony violated the attorney-client privilege and, thus, the defendant's sixth amendment right to the assistance of counsel.

Our Supreme Court agreed, holding that the admission of this testimony was improper and, citing the attorney-client privilege, ruled: "Where a psychiatric expert, whether psychiatrist or psychologist, is retained by a criminal defendant or by his counsel for the sole purpose of aiding the accused and his counsel in the preparation of his defense, the attorney-client privilege

bars the state from calling the expert as a witness. The fact that the psychiatric expert was appointed by the court rather than employed by the defense is irrelevant; the law affords no lesser protection for a defendant who is indigent than for one with means to retain his own psychiatrist to prepare a defense." Id., 628.

Later, in *State* v. *Egan*, 37 Conn. App. 213, 655 A.2d 802, cert. denied, 234 Conn. 905, 659 A.2d 1206 (1995), this court extended the rule announced in *Toste* to include communications between a defendant in a criminal matter and other professionals hired by the accused's attorney for the purpose of aiding the accused and his counsel in the preparation of a defense. Citing *Toste*, we found that communications between a defendant and a social worker, as well as the contents of the social worker's report, fell "under the common law attorney-client privilege because the defendant met with the social worker at his counsel's behest." Id., 216.

These cases appear to be in line with the generally established rule of law. In fact, Wigmore explains that "[i]t has never been questioned that the [attorney-client] privilege protects communications to the attorney's clerks and his other agents . . . for rendering his services. The assistance of these agents being often indispensable to his work and the communications of the client often being necessarily committed to them by the attorney or by the client himself, the [attorney-client] privilege must include all the persons who act as the attorney's agents." 8 J. Wigmore, Evidence (4th Ed. 1961) § 2301, p. 583. Our own Supreme Court precedent recognizes that a communication made to or in the presence of third parties is not privileged unless those other individuals present *are agents or employees of the attorney or the client* and their presence is "necessary to the consultation . . . ." *State* v. *Gordon*, 197 Conn. 413, 424, 504 A.2d 1020 (1985); see also *State* v.

*Hana*, 150 Conn. 457, 465, 191 A.2d 124 (1963); *State* v. *Cascone*, 195 Conn. 183, 186 n.3, 487 A.2d 186 (1985).

The reasoning behind this long established rule takes on added force in the context of modern litigation. This idea was aptly expressed in *State* v. *Pratt*, 284 Md. 516, 520, 398 A.2d 421 (1979), where the Maryland Court of Appeals "observe[d] that, given the complexities of modern existence, few if any lawyers could, as a practical matter, represent the interest of their clients without a variety of nonlegal assistance. Recognizing this limitation, it is now almost universally accepted in this country that the scope of the attorney-client privilege, at least in criminal causes, embraces those agents whose services are required by the attorney in order that he may properly prepare his client's case." Id. We can think of no reason why this sound reasoning should not apply in the civil context as well.

Despite our broader application of the rule in this case, however,we recognize that it is not without limits. As we noted in *State* v. *Egan*, supra, 37 Conn. App. 217, the privilege "is not absolute, and a party seeking to invoke the privilege must act so as to maintain a justified expectation that his communications would not be publicly disclosed . . . ." (Internal quotation marks omitted.) We conclude that under the facts of this case, the communications between Briggs and Environmental Management were of such a nature that the attorney-client privilege should apply.

As the trial court noted in its memorandum of decision, "the Diaz report was completed and delivered to [Accessory Controls] on or about June 7, 1990. An attorney for [Accessory Controls, Briggs,] in effect had retained Environmental Management in a letter she wrote to that company on February 27, 1990. This letter is known to both sides in this litigation but was submit-

ted under seal. The letter is replete with admonitions that all communications with respect to the [Environmental Management] employment between the president.of [Environmental Management] and his office and with the law firm representing [Accessory Controls] and between [Environmental Management] and any attorney agent or employee acting for Accessory Controls are to be confidential and made solely so that counsel for Accessory Controls can give Accessory Controls legal advice. Environmental Management is not to disclose anything gleaned from such communications or as a result of its inspection of Accessory Controls' documents or premises without permission of counsel for Accessory Controls. Environmental Management is not to permit inspection of such records or documents without permission from Accessory Controls' counsel in advance. The letter went so far as to require its recipient, apparently the president or some other high official of Environmental Management to sign it and return the letter to Accessory Controls' counsel."

We conclude, therefore, that because the communications between Briggs and Environmental Management fell within the bounds of the attorney-client privilege, and because they were "made in confidence for the purpose of seeking legal advice"; (internal quotation marks omitted) *State* v. *Gordon*, supra, 197 Conn. 423; the trial court's granting of Accessory Controls' motion for a protective order, which sought to prevent the disclosure of these communications, was not improper.[6]

---

[6] The plaintiff also claims that the trial court improperly found that the communications in question were not protected by the attorney-client privilege because they fell under the crime-fraud exception. Connecticut, however, still follows the old variation of the rule which limited the exception to the privilege where the communication involved the commission of a crime, not merely civil fraud. *Supplee* v. *Hall*, 75 Conn. 17, 22–23, 52 A. 407 (1902). The plaintiff makes no allegation that the communications in this case involved evidence of the commission of a criminal act.

Even if we were to reach the issue, however, we note that the trial court

## III

The plaintiff next claims that the trial court improperly granted Accessory Controls' motion in limine. We do not agree.

Prior to trial, Accessory Controls filed a motion in limine seeking to exclude "certain attorney-client protected communications" as were specified in its motion. The motion requested that "[t]he draft report of the environmental consultant [Diaz report] and all related correspondence between Accessory Controls' counsel and Accessory Controls' environmental consultant [Brigg's notice] not be introduced, referred to, or used for any purpose inconsistent with . . . Judge Corradino's" decision on Accessory Controls' motion for a protective order. Again, while the motion in limine was granted as to other communications, the plaintiff appeals only the preclusion of the Diaz report and the Briggs notice.

Nevertheless, an examination of the plaintiff's brief discloses that he does not advance a separate legal argument as to why the granting of the motion in limine was improper. He merely appeals the granting of the motion in limine "in that it does no more than apply the trial court's earlier decisions on [Accessory Controls'] motion for a protective order to the introduction of evidence at trial." In fact, he acknowledges that "the decision of the trial court [on the motion in limine] is for all intents and purposes an adoption of the [trial] court's decision on the motion for protective order . . . ." As a result, he relies on the same argument he made as to why the granting of the motion for a protective order was improper.

found that the communications contained no evidence of civil fraud and would not, therefore, fall under the crime-fraud exception. After our review of the trial court's memorandum of decision, as well as the communications at issue, we would have to agree.

Generally, "[t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993). Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion. *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994)." *State* v. *Gracia*, 51 Conn. App. 4, 15–16, 719 A.2d 1196 (1998).

Here, we have already concluded that Judge Corradino's ruling on Accessory Controls' motion for a protective order, which sought to prevent the disclosure of communications covered by the attorney-client privilege, was not improper. We conclude, therefore, that Judge Aurigemma's later adoption[7] of that order in ruling on Accessory Controls' motion in limine, which sought to exclude the same communications, was not an abuse of discretion.

## IV

The plaintiff finally claims that the trial court improperly granted Accessory Controls' motion for judgment cast as a motion to dismiss. We do not agree.

---

[7] While Judge Aurigemma simply wrote "granted" on Accessory Controls' motion in limine next to the specific request to exclude the Diaz report and the Briggs notice, an examination of the transcript from the hearing on that motion reveals the trial court's reasoning. In ruling on Accessory Controls' motion in limine, the trial court stated: "In this case—well, my feeling in general is that when there is a—when it's obvious that the previous judge spent an inordinate amount of time and thoroughly reasoned and analyzed and supported his decision, as Judge Corradino has done in this case, that I guess my feeling is I would have to violently disagree with his conclusions to overturn it. I don't happen to violently disagree. . . . I am not going to deviate from that ruling. . . . And so with respect to the defendant's motion in limine, number one is granted . . . ." The trial court's mention of "number one" is a reference to the first request in Accessory Controls' motion in limine which sought to preclude the introduction of the Diaz report and the Briggs notice.

Following the granting of the motion in limine, Accessory Controls filed a motion for summary judgment. The plaintiff, in turn, filed a memorandum of law in opposition. On April 3, 1998, the following colloquy took place:

"The Court: All right. Is there a motion that the defendant wants to make?

"[Counsel for Accessory Controls]: Yes, Your Honor. The court will recall that we have filed a motion for summary judgment and there has been opposition and memoranda and exhibits in that regard. As a result of an agreement between the parties, that motion for summary judgment is being withdrawn and the plaintiff's material in opposition is being withdrawn. The defendant is now proposing to make an oral motion to dismiss based upon the fact that the court, through rulings of Judge Corradino and through this court in a motion in limine, has precluded the plaintiff from being able to present material facts that would be relevant and admissible in any trial and on that basis the defendant's motion to dismiss should be granted.

"[Plaintiff's Counsel]: Your Honor, as [counsel for Accessory Controls] indicates, there is an agreement that the motion for summary judgment be withdrawn and then [he] present the motion he has made in this format. The plaintiff feels that our position with respect to Judge Corradino's ruling, be that as a general phrase, our position on that is very well documented in the case file at this point. . . . And so we feel at that point, Your Honor, that our position has been laid out and I guess both Mr. O'Connor and I join in asking the court to rule on this motion."

At which point the trial court noted that because it had granted Accessory Controls' motion in limine, it would be "impossible for the plaintiff to proceed." The

trial court then ruled that it was "grant[ing] the judgment of dismissal of the plaintiff's suit based on [its] ruling adopting Judge Corradino's April 19, 1996 decision with the understanding that it's the intent of the parties to appeal Judge Corradino's ruling."

A motion to dismiss "properly attacks the *jurisdiction* of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis added; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991); see also Practice Book § 10-31.[8] As the plaintiff explains in his brief, however, the trial court "proposed a form of judgment of dismissal for the stated purpose of allowing the parties to proceed to the Appellate Court to address the trial court's decisions regarding both the motion in limine and the motion for a protective order." The plaintiff asserts that the dismissal was "fatally flawed due to the error of the decisions on which it relied."

The plaintiff does not claim, however, that the trial court employed the wrong procedural vehicle in dismissing the plaintiff's complaint.[9] Instead, the plaintiff argues that because the trial court improperly granted Accessory Controls' motion in limine, which sought to preclude communications protected by the attorney-client privilege, the "dismissal" of the plaintiff's complaint, which was based on that previous ruling, was improper. Nevertheless, because we have previously held that the trial court properly granted Accessory

[8] Practice Book § 10-31 (a) provides in relevant part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. . . . "

[9] Indeed, it is clear from our examination of the transcript in this case that it was the intent of the trial court, as well as the parties, to provide the plaintiff with a final judgment from which he could take an appeal to this court. Under Practice Book § 61-1, a party must appeal from a final judgment.

Controls' motion in limine, we must reject the plaintiff's final claim. The plaintiff has simply recast his original argument in different terms.

The judgment is affirmed.

In this opinion the other judges concurred.