[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS (#101)
The plaintiff, Ilene Cromwell Oppenheim, a resident of Cheshire, Connecticut, filed a two count complaint on August 1, 2000, against the defendants, Erwin, Ott, Clark, Campbell (EOC C), a Maine law partnership, and its four individual partners, James S. Erwin, David N. Ott, Jeffrey J. Clark, and John F. Campbell. The first count of the complaint states a claim for intentional infliction of emotional distress and the second count states a claim for libel. Both claims arise out of a CT Page 4962 letter dated February 9, 2000, that Campbell sent to the plaintiff in Connecticut.
The defendants filed a motion to dismiss both counts on September 8, 2000 on the ground that the court lacks personal jurisdiction over the defendants. A copy of the February 9, 2000 letter from Campbell is attached, as Exhibit B, to the defendants' memorandum in support of their motion. (Defendants' Memorandum). On November 7, 2000, the plaintiff filed her memorandum in opposition to the defendants' motion. The court heard oral argument on January 16, 2001.
"A ruling on a motion to dismiss is neither a ruling on the merits of the action. nor a test of whether the complaint states a cause of action. . . . Motions to dismiss are granted solely on jurisdictional grounds. . . ." (Citations omitted; internal quotation marks omitted.)Olson v. Accessory Controls Equipment Corp., 54 Conn. App. 506, 515,735 A.2d 881 (1999), aff'd on other grounds, 254 Conn. 145, 757 A.2d 14
(2000). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader."Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). "If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction."Knipple v. Viking Communications Ltd., 236 Conn. 602, 607, 674 A.2d 426
(1996). "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) Olsonv. Accessory Controls Equipment Corp., supra, 54 Conn. App. 515.
In the complaint, the plaintiff alleges that EOC C represents the estate of Jarvis Cromwell. It is undisputed that the plaintiff is a beneficiary under Cromwell's will and is representing herself pro se in connection with the various issues arising from the administration of the estate.[1] It is also undisputed that EOC C represents the personal representative and trustee under Cromwell's will in the probate court of York County, Maine, in connection with the administration of the Cromwell estate. The plaintiff alleges that she complained to the probate court many times about documents the firm submitted to the probate court and that she complained to attorney Campbell about issues regarding settlement of the estate. (Complaint, Count One, ¶ 8.) The plaintiff alleges that the firm resented her objections and wrote the February 9, 2000 letter in response thereto. (Complaint, Count One, ¶¶ 8, 9.) She alleges that the letter falsely characterized her objections, made false claims, and made threats, with the intent to inflict emotional distress CT Page 4963 on the plaintiff. (Complaint, Count One, ¶¶ 18, 19.) Finally, she alleges that by sending the February 9, 2000 letter to the plaintiff and numerous others, (Complaint, Count One, ¶ 19),[2] the defendants libeled the plaintiff with false allegations. (Complaint, Count Two, ¶ 17.). The plaintiff alleges that the letter was delivered to her in Connecticut by U.S. mail. (Complaint, Count One, ¶ 9.)
In their motion to dismiss, the defendants allege that Campbell has been the principal lawyer involved in the Cromwell matter, and that he sent the February 9, 2000 letter. The defendants allege that, because the plaintiff is pro se, they were required to send her court filings and certain other papers at her Connecticut address, in accordance with rule 5 of the Maine Rules of Civil Procedure.[3] The February 9, 2000 letter from Campbell, which gave rise to this action, was signed "Erwin, Ott, Clark Campbell."
The defendants contend that the court lacks personal jurisdiction over them under General Statutes § 52-59b (a) because none of the individual defendants have resided in Connecticut since 1972, and they have never practiced law, transacted or solicited business, or owned any real estate in Connecticut. They add that EOC C has never done business, or had a presence in Connecticut and the defendants have not been required to be in Connecticut in connection with their representation of the representative of Cromwell's estate. In addition, the defendants argue that if the court determines that it does have jurisdiction over them pursuant to § 52-59b, its jurisdiction would violate the constitutional principles of due process.
In opposition to the motion to dismiss, the plaintiff argues that the court has personal jurisdiction over the defendants pursuant to General Statutes § 52-59b because the defendants mailed the February 9, 2000 letter to her in Connecticut and the letter had effects that form the basis for her complaint.
"[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Kim v. Magnotta, 249 Conn. 94, 101-02, 733 A.2d 809 (1999). "When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks CT Page 4964 omitted.) Knipple v. Viking Communications Ltd., supra, 236 Conn. 606.
The record indicates that the plaintiff properly served legal process on the defendants via service on the Secretary of State, pursuant to General Statutes § 52-59b (c). Section 52-59b applies to nonresident individuals and foreign partnerships, and is therefore the applicable state long-arm statute.[4]
 A. Personal Jurisdiction over Campbell pursuant to General Statutes § 52-59b
General Statutes § 52-59b (a)(2) provides in pertinent part: "[A] court may exercise personal jurisdiction over any nonresident individual, or foreign partnership . . . who in person or through an agent . . . (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act. . . The defendants argue that, assuming that by sending the February 9, 2000 letter Campbell committed a tortious act, the issue under § 52-59b
(a)(2) is whether the act. . . ." was committed within Connecticut. The defendants contend that it was not and cite to N.E. Contract Packers v.Beverage Services, Superior Court, judicial district of Waterbury, Docket No. 100039 (June 18, 1992. Gaffney, J.) (6 Conn.L.Rptr. 582). In that case the court held that, under subsection (a)(2), "the tort must be committed in Connecticut and the defendant must be physically present within the state at the time of commission." (Emphasis added.) Id., 584. Several Superior Court cases, each ultimately relying on N.E. ContractPackers v. Beverage Services, agree that the defendant's presence within the state is required under § 52-59b (a)(2).[5] Several other Superior Court cases have, however, applied a "no presence required" interpretation of General Statutes §§ 33-411 (c)(4)[6] and 52-59b
(a)(2).[7] Most of these cases involved, as did N.E. Contract Packersv. Beverage Services, false representations or fraudulent misrepresentations that entered Connecticut by phone, wire or mail.
In Knipple v. Viking Communications, supra, 236 Conn. 610-11, the Connecticut Supreme Court held that "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33-411 (c)(4) . . . because the alleged misrepresentations . . . would have been made by way of communications sent to and received by [the plaintiff] from the [out-of-state] defendants in Connecticut." (Citations omitted; internal quotation marks omitted.) Although in that case the court was addressing the issue of personal jurisdiction under General Statutes § 33-411 (c)(4), it cited with approval David v.Weitzman, 677 F. Sup. 95, 98 (D. Conn. 1987), in which the District Court held that the transmission of fraudulent misrepresentations into Connecticut by mail or telephone was "tortious conduct in Connecticut CT Page 4965 sufficient to establish personal jurisdiction under Connecticut's long-arm statute, §§ 33-411 (c)(4) and 52-59b (a)(2)." (Emphasis in original.) Id. The Connecticut Supreme Court's acknowledgment of the District Court's conclusion indicates its approval of that court's interpretation of § 52-59b (a)(2).[8] As such, the Supreme Court would probably disagree with the conclusion reached by the court in N.E.Contract Packers v. Beverage Services, and other cases relying on it, to the extent they determined that the defendant must be present in Connecticut in order for the court to have jurisdiction in such communication torts under § 52-59b (a)(2).
Furthermore, in at least two cases courts have applied a "no presence required" interpretation to a cause of action for libel under General Statutes § 33-411 (c)(4). In Braunstein v. Hayes Thynne, P.C., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 117928 (February 16, 1993, Nigro, J.) (8 C.S.C.R. 280, 281), the court found that § 33-411 (c)(4) confers personal jurisdiction "where a defamatory statement is printed out of state but published and distributed within Connecticut by a non-resident defendant" because, under such facts, the tort is committed in Connecticut.
Similarly, in Buckley v. New York Post Corp., 373 F.2d 175, 178 (2d Cir. 1967), the court, construing the term "tortious conduct in this state" in § 33-411 (c)(4) and applying the `last event' approach, stated that "it would seem hard to deny that distributing . . . a libel about a resident in Connecticut is `tortious conduct in this state,' under any ordinary meaning of those words in subdivision (4)." The court concluded that, "damage to a person's reputation caused by sending a libel into the state where he lives could still be considered as arising from `tortious conduct' in that state; it could well be said that the publisher directly inflicts damage on the intangible reputation just as the frequently hypothesized but rarely encountered gunman firing across a state line does on the body. . . ." (Emphasis added.) Id., 179.
Thus, these authorities agree that, if a plaintiff alleges the elements of a tort committed by way of communications sent directly by the defendant into Connecticut, and alleges that the plaintiff and/or other individuals received the communications and that damage was inflicted on the plaintiff as a direct result of such communications, the last event necessary to make the defendant liable for the alleged tort occurred in Connecticut and the tortious act is regarded as having been committed within the state for purposes of § 33-411 (c)(4) and, by implication, § 52-59b (a)(2).[9]
In this case, the plaintiff alleges that the defendants "wrote a letter dated February 9, 2000, and delivered [it] by U.S. mail, to her in CT Page 4966 Connecticut"; (Complaint, Count One, ¶ 9); that by sending this letter to the plaintiff, the defendants intentionally inflicted emotional distress on her; (Complaint, Count One, ¶ 19); and that the plaintiff was injured thereby.[10] (Complaint, Count One, ¶ 20.) The defendants have not disputed these allegations. In fact, the defendants specifically allege that Campbell sent the letter to the plaintiff. "[I]n order to make out . . . a prima facie case under a long arm statute the plaintiff must allege jurisdictional facts that pertain to the cause of action." (Emphasis in original; internal quotation marks omitted.) Olsonv. Accessory Controls Equipment Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 525839 (April 13, 1995, Corradino, J.) (14 Conn.L.Rptr. 82, 84), aff'd,54 Conn. App. 506, 735 A.2d 881 (1999), aff'd on other grounds,254 Conn. 145, 757 A.2d 14 (2000). The jurisdictional facts alleged by the plaintiff here satisfy this requirement. See Knipple v. VikingCommunications, supra, 236 Conn. 611 (undisputed allegations of misrepresentation by way of telephonic and postal communications sent to and received in Connecticut satisfy § 33-411 (c)(4)).
The plaintiff has adequately alleged that Campbell engaged in tortious conduct in this state, and this court has jurisdiction over him pursuant to § 52-59b (a)(2).
 B. Personal Jurisdiction over EOC C and over the individual defendants Erwin, Ott, and Clark pursuant to General Statutes § 52-59b.
The defendants argue that "[a]s to defendants Erwin, Ott, and Clark, there is no colorable argument that any provision of C.G.S. § 52-59b
(a) authorizes the assertion of jurisdiction over any of the defendants" because none of these defendants transact any business or own real property in Connecticut, and none of them authored, signed, or sent the February 9, 2000 letter. (Defendants' Memorandum, p. 5.)
General Statutes § 52-59b permits the court to exercise jurisdiction over a "nonresident individual" or "foreign partnership" who "in person or through an agent" commits any of the acts enumerated in subsection (a). Connecticut law on partnerships provides that "[e]ach partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name . . . binds the partnership. . . ." General Statutes § 34-322 (1). Furthermore, General Statutes § 34-327[11]
provides that generally "all partners are liable jointly and severally for all obligations of the partnership. . . ." See Fuessenich v. DiNardo,195 Conn. 144, 159, 487 A.2d 514 (1985). CT Page 4967
Obligations for which all partners are liable include those chargeable to the partnership under section 34-326 (a),[12] which provides: "A partnership is liable for loss or injury caused to a person . . . as a result of a wrongful act or omission . . . of a partner. . . ." "Pursuant to this statute, liability is imposed on a partner for the tortious acts of his partner only where (1) the act occurred in the ordinary course of the partnership's business, or (2) the tortfeasor partner acts with the authority of his partner or partners." Sheridan v. Desmond,45 Conn. App. 686, 692, 697 A.2d 1162 (1997).[13]
The plaintiff properly served process on the four individual partners, as well as the partnership, under § 52-59b (c) by service on the Secretary of State. The plaintiff alleges that the defendants are "lawyers holding themselves out as a law practice under the name of Erwin, Ott, Clark Campbell . . ." and that the individual defendants "[practice] law with EOCC at its place of business." (Complaint, Count One, ¶¶ 2-6.) The defendants do not dispute the plaintiff's allegations regarding their partnership. Indeed, the defendants affirm in their affidavits that they are partners practicing law as a Maine partnership.
The plaintiff further alleges that "[t]he firm represents the Executor of the Estate of Jarvis Cromwell . . ." and that "the firm" wrote the February 9, 2000 letter to the plaintiff and mailed it to her in Connecticut. (Emphasis added.)(Complaint, Count One, ¶¶ 7, 9.) Again, the defendants do not dispute these allegations. In his affidavit, Campbell states that "EOC C has for some time represented [the executor of Cromwell's estate]" and that "certain of my partners have also worked on various aspects of the administration of said Estate. . . ." (Defendants' Memorandum, Exhibit A, ¶¶ 5, 6.) In addition, Erwin, Ott and Clark state in their affidavits that "[d]ue to Ms. Oppenheim's pro se status in the Maine estate proceedings, we are required to write to her. . . ." (Emphasis added.) (Defendants' Memorandum, Exhibits C, D, E, ¶ 6.) Finally, the February 9, 2000 letter was printed on the partnership's letterhead, listed all of the partners in the top margin, and was signed "Erwin, Ott, Clark Campbell." (Defendants' Memorandum, Exhibit B.)
Based on the Connecticut law of partnership and agency, the plaintiff's undisputed allegations and the evidence before the court, the plaintiff has made out a prima facie case that the defendants are responsible for sending the February 9, 2000 letter into Connecticut, where she received it. Accordingly, the court has jurisdiction over Erwin, Ott, and Clark, as well as the partnership, pursuant to § 52-59b (a)(2).
C. Constitutional Requirements of Due Process
CT Page 4968
Having determined that it may exercise jurisdiction over the defendants under the long arm statute, the court must next inquire whether the exercise of jurisdiction over the defendants would violate constitutional principles of due process. Knipple v. Viking Communications, supra,236 Conn. 606. This requires the court to determine whether the nonresident defendants have "`certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Thomason v. Chemical Bank,234 Conn. 281, 287, 661 A.2d 595 (1995), citing International Shoe Co.v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. `[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" United States Trust Co. v.Bohart, 197 Conn. 34, 41, 495 A.2d 1034 (1985), citing World WideVolkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559,62 L.Ed.2d 490 (1980).
The defendants argue that the only contact they had with Connecticut is that one of their partners was forced to send correspondence to a pro se
litigant in Connecticut, and this cannot be described as a purposeful availment. (Defendants' Memorandum, p. 9.) In support of this argument, the defendants cite rule 5 of the Maine Rules of Civil Procedure, titled "Service and Filing of Pleadings and Other Papers". Under rule 5(a) a party to a lawsuit is required to serve certain enumerated papers and similar papers upon all other parties.[14] Letters are not included in the list of papers enumerated, and the defendants failed to offer evidence that the February 9, 2000 letter is similar to any of the specifically enumerated papers.
In Braunstein v. Hayes Thynne, P.C., supra, 8 C.S.C.R. 280, the defendants were lawyers who argued, much like the defendants in the present case, that because the two letters which formed the basis for the plaintiffs cause of action were written by them in the course of practicing law, it would offend traditional notions of fair play and substantial justice to allow the letters to be a predicate for in personam jurisdiction over them. Id., 281. The court rejected this argument noting that: "When, [as here] the controversy is specifically related to a defendant's contact with a forum there is sufficient due process contact if the defendant has `purposefully directed' his activities at residents of the forum and the litigation arises from alleged injuries that `arise out of or relate to' those activities. . . . [S]ingle tortious acts committed in a forum state by persons having no other contacts with that state have long been held sufficient to warrant CT Page 4969 personal jurisdiction under the Due Process Clause." Id., citing David v.Weitzman, supra, 677 F. Sup. 99.
As in Braunstein v. Haves Thynne, the defendants here purposefully directed the February 9, 2000 letter to the plaintiff in Connecticut,[15]
where it was received, and this litigation arises from the plaintiffs related injuries. See Piro Paving, Inc. v. National Attachments, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 162190 (February 1, 2000, Karazin, J.), citing Thomason v. ChemicalBank, supra, 234 Conn. 288; Center Capital Corp. v. Hall, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 452084 (July 19, 1993, Dorsey, L., S.T.R.) (9 Conn.L.Rptr. 265, 269) and cases cited therein.
Finally, the defendants have not shown that litigating this action in Connecticut would be so burdensome, costly, or inconvenient as to be unfair. United States Trust Co. v. Bohart, supra, 197 Conn. 42-3;Advanced Claims Service v. Franco Enterprises, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 374548 (October 13, 2000, Melville, J.).
The plaintiff has stated sufficient jurisdictional facts for the court to assume jurisdiction over the defendants in accordance with Connecticut's long arm statute, General Statutes § 52-59b (a)(2). Furthermore, the exercise of jurisdiction over the defendants in this case does not violate the constitutional requirements of due process.
Motion denied.
Licari, J.